534 So.2d 1317 (1988)
STATE of Louisiana
v.
Arthur MUNTZ.
No. 88-KA-0498.
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1988.
*1318 Jack H. Tobias, New Orleans, for appellant.
Harry F. Connick, Dist. Atty., Beryl McSmith, Asst. Dist. Atty., New Orleans, for appellee.
Before BARRY, CIACCIO and WARD, JJ.
CIACCIO, Judge.
A jury found defendant guilty as charged with simple burglary of an inhabited dwelling, La.R.S. 14:62.2. The state filed a bill of information under La.R.S. 15:529.1, charging defendant with being a second felony offender. After a hearing, the court found defendant to be a second felony offender and sentenced him to serve ten years imprisonment at hard labor without the benefit of parole and without the benefit of good time.
Defendant appeals his conviction and his adjudication as a second felony offender. Defendant originally filed thirteen assignments of error, but in his brief he did not address any of the assignments as enumerated. We consider those errors argued in his brief, of which there are five, and treat the remainder as abandoned. See Uniform Rules-Courts of Appeal, Rule 2-12.4.
Further, we review the record for any error discoverable by an inspection of the pleadings and proceedings. See La.C.Cr.P.
Art. 920. Reviewing the pleadings and proceedings and considering the alleged errors argued by defendant, we find no error warranting reversal or modification of defendant's conviction, adjudication as a second felony offender, or sentence. We, therefore, affirm.
Julie Giovingo lived in one side of a shotgun double located at 3612-14 Palmyra Street. Her mother-in-law, Dorothy Giovingo, and her family lived on the other side of the double. At approximately noon on February 21, 1987, Julie Giovingo noticed a small yellow car pull up and two men exit the vehicle. The men, later identified as Jimmy Sprinkle and Arthur Muntz, approached her house. Arthur Muntz rang her doorbell and knocked on her door while Sprinkle knocked at her mother-in-law's door. Because she was alone in the house and did not recognize either man, Mrs. Giovingo did not answer the door. The defendant rang her bell and knocked on the door for about ten minutes. Both men then got into the car and drove off.
Mrs. Giovingo then went outside and walked to the corner to look around. A Mardi Gras parade was passing on Canal Street, and she decided to return home. She again noticed the yellow car parked nearby and saw Sprinkle getting out of the driver's side.
Shortly after returning to her home she heard a noise coming from the other side of the house. She went out of her back door and entered her mother-in-law's home through the kitchen. She observed that the rear bedroom had been ransacked and saw Jimmy Sprinkle in the front bedroom.
She ran back to her own apartment and called the police. She looked out of her window and saw Muntz sitting on the porch looking around. Mrs. Giovingo then went to her back bedroom and heard a lot of noise coming from the adjacent apartment. She returned to the front window and noted that Muntz was gone. She saw Sprinkle, however, carrying a stuffed pillowcase walking down the steps and over to the yellow car. She again called the police and described the car and Muntz's clothing.
*1319 Police Officers Blanque and Kelley received the burglary in progress call and headed for 3614 Palmyra. They received the second dispatch describing the getaway car, its location and a description of the perpetrators. They located the vehicle at the corner of Palmyra and Telemachus Streets. The occupants suddenly drove off, and the police chased the yellow car for one block. The route was blocked by a passing Mardi Gras parade.
Arthur Muntz was wearing a red hat, plaid shirt and tan jacket as described in the dispatch. The officers conducted a pat-down search for weapons and removed two knives from Sprinkle. They observed the pillowcase in the rear of the vehicle and saw stereo equipment protruding from it.
The suspects were then transported back to the scene. The victim was asked if she could identify them. Mrs. Giovingo identified both men as she approached the police car. The men were asked to get out of the car so that they could be searched and so that Mrs. Giovingo could get a better look at them. The suspects were then identified a second time. The suspects were then placed under arrest.
Officer Blanque testified that he saw Sprinkle taking jewelry out of his pockets and shoving it under the back seat of the police car. All of the recovered property was identified by Dorothy and Julie Giovingo as having been in 3614 Palmyra. The recovered items were photographed by the crime lab and returned to their owners.
Defendant complains that the evidence is insufficient to support his conviction. He argues that there is no evidence that he ever entered the house, and points out that co-defendant Sprinkle testified that Muntz knew nothing about the burglary. Muntz contends that he did no more than sit on the porch, unaware that Sprinkle was burglarizing the home. He argues also that since he did not enter the house, he should have been charged specifically as a principal.
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La.R.S. 14:24. Any and all persons involved in the commission of a crime to an extent which will satisfy the definition of "principal" stated in La.R.S. 14:24, whether the direct perpetrator of the act constituting the offense or not, may be charged with commission of the offense. There is absolutely no requirement that an indictment explicitly denominate the accused as "principal." That the accused is indicted for the offense itself, and not charged as an accessory after the fact, irrefutably evidences that he is charged as a principal. State v. Peterson, 290 So.2d 307 (La.1974). See also State v. Ralph, 336 So.2d 836 (La.1976) (overruled in part on other grounds, State v. Berndt, 416 So.2d 56, 59 ft. nt. 4 (La. 1982)) and State v. McCullough, 503 So.2d 1194 (La.App. 3d Cir.1987), writ denied 508 So.2d 66 (La.1987).
In a burglary prosecution, the state may carry its burden by proving beyond a reasonable doubt that the accused, who may not have entered unauthorizedly, aided and abetted someone who did enter unauthorizedly. See State v. Otis, 339 So.2d 343 (La.1976); State v. Davis, 463 So.2d 733 (La.App. 4th Cir.1985); and State v. Rogers, 428 So.2d 932 (La.App. 1st Cir. 1983). Co-defendant Sprinkle testified that he burglarized the home. When he testified that defendant Muntz knew nothing of the burglary, however, the jury apparently did not believe him. Mrs. Giovingo's account of the burglary established defendant's role as lookout and accomplice for burglar Sprinkle. Viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of simple burglary of an inhabited dwelling to have been proved beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Wright, 445 So.2d 1198 (La.1984). And *1320 compare State v. McCullough, above. We, therefore, hold that the evidence is sufficient to sustain defendant's conviction.
Defendant argues that his motion to suppress the identification should have been granted. He contends that the one-on-one "show up" with the suspects in the rear of the police car and the police officer's request that the victim identify the suspects made the identification procedure impermissibly suggestive.
Typically a suspect apprehended shortly following a crime is returned to the scene by the apprehending officers and is presented to the victim for identification. These, so called, one-on-one "show ups" have been held permissible because prompt confrontation promotes fairness by assuring reliability of the identification (the identification is fresh in the mind of the witness) and the expeditious release of innocent suspects. See State v. Collins, 350 So.2d 590 (La.1977); State v. Lee, 340 So.2d 1339 (La. 1976), cert. denied 431 U.S. 941, 97 S.Ct. 2658, 53 L.Ed.2d 260 (1977); State v. Maduell, 326 So.2d 820 (La.1976). Even if suggestive identification procedures are proven by the defense, it is the likelihood of misidentification, and not the mere existence of suggestiveness, which violates due process. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Williams, 375 So.2d 364 (La.1979); State ex rel. Fields v. Maggio, 368 So.2d 1016 (La.1979); State v. Culpepper, 434 So.2d 76 (La.App. 5th Cir.1982).
In considering the validity of in-field identification the court considers the totality of the circumstances to determine if it is fairly conducted or unduly suggestive. State v. Lee, above. In this case the suspects were apprehended within seconds of leaving the scene of the crime. They were immediately returned to the scene by the apprehending officers who asked the witness to identify them. This incident is a paradigm of a permissible one-on-one "show up." We find nothing unfair or suggestive about the identification procedure in this case.
Defendant complains that the trial judge improperly limited his cross-examination of witnesses.
... Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject to the discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. Davis v. Alaska, supra, 415 U.S. [308] at 316, 94 S.Ct. [1105] at 1110, 39 L.Ed.2d [347] at 353 [1974]; State v. Nash, 475 So.2d 752, 754-755 (La.1985); State v. Hillard, 398 So.2d 1057, 1059-1060 (La.1981); State v. Toledano, 391 So.2d 817, 820 (La.1980).
The three main functions of cross-examination are: (1) to shed light on the credibility of the direct testimony; (2) to bring out additional facts related to those elicited on direct; and (3) to bring out additional facts which tend to elucidate any issue in the case. McCormick, supra, Sec. 29, at 63; See La.R.S. 15:280; Proposed Louisiana Code of Evidence, art. 611(B) and the comments thereto. See also Davis v. Alaska, supra, 415 U.S. at 415-417, 94 S.Ct. at 1110-1111, 39 L.Ed.2d at 353-354; State v. Nash, supra.

State ex rel. Nicholas v. State, 520 So.2d 377, 380 (La.1988).
Defendant complains that he was not permitted to pursue a question about the weather at the time of the crime. The evidence established that it was midday on a rainy, February day in New Orleans. There is no suggestion of any weather irregularities or of how any additional weather information would be relevant to this case.
Defendant complains that he was not allowed to ask Mrs. Giovingo what color robe she was wearing when she first saw Sprinkle and Muntz on her front porch.
*1321 He speculates that if she had been wearing a bright-colored robe, he should have seen her when he was trying to determine if anyone was home. Cross-examination does not function to pursue such irrelevant speculation.
Defendant complains that his counsel was not permitted to ask Officer Blanque how he would handle a pat down and search of counsel if he suspected counsel of a crime. As phrased by counsel, the questions required the witness to engage in irrelevant speculation. Further, counsel's apparent purpose of eliciting information concerning standard operating procedures was fully explored in his cross-examination of Officer Kelley.
The trial judge is vested with wide discretion in determining the relevancy of evidence, and his ruling will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. State v. West, 419 So.2d 868 (La.1982); State v. Miles, 402 So.2d 644 (La.1981). In no instance where the trial judge did not permit defendant to ask a witness a question do we find any abuse of discretion. We hold, therefore, that defendant was not limited improperly in his cross-examination of witnesses.
Defendant complains that the trial judge did not charge the jury on circumstantial evidence. The record before us does not contain a transcript of the jury charge; there is no indication that defendant requested that the transcript of that portion of the proceedings be included in the record on appeal; counsel's request in the motion for appeal for "the entire record" does not certify any "good grounds for such request." See La.C.Cr.P. Art. 914.1. Further, there is no indication in the record that defendant requested a charge on circumstantial evidence or timely objected to a failure to give the charge. A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of the objection. La.C.Cr.P. Art. 801.
Nevertheless, on the record before us, we recognize that there is no need for a charge on circumstantial evidence. The evidence against defendant is direct: an eyewitness testified that she watched him and his co-defendant commit a burglary. That defendant offers evidence to suggest an innocent explanation for his action does not suddenly change the evidence from direct to circumstantial. Assuming a proper, timely objection to a failure to charge the jury on circumstantial evidence, we find no error in refusing to give the charge.
Defendant's final complaint addresses an "inconsistency" in the charge that he is a multiple offender. Prior to this crime defendant had been convicted under a two-count bill of information for simple burglary and possession of stolen property. Defendant now questions the validity of the conviction for possession of stolen property, arguing its unavailability for use as a predicate offense in a multiple bill under La.R.S. 15:529.1. We need not consider the effect of the alleged "inconsistency" because defendant's prior conviction for possession of stolen property has not been used as a predicate offense for a multiple bill. The multiple bill under which defendant was adjudicated a multiple offender in this case used as a predicate offense defendant's prior conviction for simple burglary, to which no objection has been raised.
For the reasons assigned, we affirm defendant's conviction, adjudication as a multiple offender, and sentence.
AFFIRMED.