582 So.2d 317 (1991)
STATE of Louisiana
v.
Alton W. WALTERS.
No. 90-KA-0477.
Court of Appeal of Louisiana, Fourth Circuit.
May 30, 1991.
Writ Denied September 20, 1991.
*319 Harry F. Connick, Dist. Atty., Jack Peebles, Asst. Dist. Atty., Karen L. Rosenberg, Student Practitioner, New Orleans, for plaintiff, appellee.
Jack H. Tobias, New Orleans, for defendant, appellant.
Before BARRY, CIACCIO and ARMSTRONG, JJ.
ARMSTRONG, Judge.
The defendant, Alton W. Walters, was charged by bill of information with one count of attempted armed robbery, one count of armed robbery and one count of being a convicted felon in possession of a firearm, violations of La.R.S. 14:27-14:64, R.S. 14:64, and R.S. 14:95.1, respectively.[1] After a trial on October 19-20, 1989 on the counts of attempted armed robbery and armed robbery only, a twelve-person jury found the defendant guilty as charged on both counts. The defendant filed a motion in arrest of judgment and a motion for new trial which the trial court denied. He was sentenced to serve twenty years at hard labor without benefit of probation, parole or suspension of sentence on each count, sentences to run concurrently. The defendant now appeals his conviction, raising nine assignments of error.

FACTS
On March 18, 1989, shortly after 3:00 a.m., Sergeant Ronald Johnson, an off-duty New Orleans police officer, drove past the Popeye's Famous Fried Chicken & Biscuits fast food restaurant located at Paris Avenue and Gentilly Road. He saw four men in the parking lot, and one of the men, a security guard, had his hands up in the air. The group was walking toward the restaurant. Johnson turned his car around and headed back to the restaurant.
Two of the men went behind the restaurant and then ran across an adjacent field toward the railroad tracks which ran along Interstate 610. Johnson called in a description of the pair to the police dispatcher. Johnson described one of the men as taller with a dark complexion and wearing dark blue jeans, a dark jacket, a cap and a scarf or bandana on his face which he pulled off as he ran. He described the other as shorter with a lighter complexion and wearing gray pants, a dark jacket, a cap and a scarf over his face. The second man also wore a medallion which hung over his shoulder as he ran.
Officers John Brunet and Dwayne Marshall responded to Johnson's call. They met with Johnson who gave them the description of the two suspects and the direction in which they ran. They proceeded down Paris went under the I-610 overpass and turned toward Bruxelles Street. At Bruxelles and LaFreniere, they saw two black males walking on either side of the street. The two men kept looking back, and they were out of breath. They both wore black T-shirts, but one wore dark blue jeans and the other, gray pants. The second man also wore a large medallion.
The officers detained the two men, one of whom was the defendant; they noticed that the lower parts of the suspects' pants and tennis shoes were wet and covered *320 with grass. The officers took them back to the Popeye's where they were identified by Johnson, the security guard and a Popeye's employee, Avery Chevious.
Gregory Bailey, the security guard, testified that he went out with Chevious when Chevious went to dispose of the garbage in the trash dumpster. He turned around and saw two men, one of whom was armed with a 12 gauge sawed-off shotgun and the other with a .22 caliber revolver. Bailey put up his hands, and the man with the shotgun pointed his gun at Bailey and ordered him to put down his hands. He then took Bailey's gun which was a Taurus revolver. The men ordered Bailey to walk toward the restaurant, and Bailey called out for Chevious. They then ordered Chevious to walk to the restaurant. Bailey was ordered to open the door, but the door had been locked. At this time, Officer Johnson appeared, and the two men ran behind the restaurant and across the field.
Bailey described the one with the shotgun as taller and with a darker complexion than the other man. He stated that the taller man wore dark blue jeans, a dark jacket, a blue cap and a blue bandana covering the lower half of his face. He described the shorter man as wearing gray corduroy pants, a blue sweatshirt, a blue and white cap, and a white handkerchief on his face. He testified that as they ran toward the rear of the restaurant the two men pulled down the scarves covering their faces, and he was then able to see their faces. When the two suspects were brought to the restaurant by Brunet and Marshall, Bailey identified them as the robbers, and he specifically identified the defendant as the taller one. Chevious testified that the taller and darker robber wore blue jeans, a jean jacket, a cap, and a bandana over his face. He testified that the shorter and lighter skinned man wore stonewashed gray jeans, a blue sweatshirt, a cap and a bandana over his face. He identified defendant and his companion as the robbers when they were brought to the restaurant. He admitted that he could not get a good look at their faces.
Pamela Hutchinson, the manager of the Popeye's, testified that she was in the office doing paperwork and that she became concerned when it took Bailey and Chevious too long to return from putting out the garbage. She went to the door and saw Bailey and Chevious being held up by the two armed men. She locked the door and ran to the telephone. She called 911 to report a robbery and stayed on the telephone until told that the police had arrived. She saw the robbers and was able to give a clothing description similar to that already given.
After bringing the defendant and his companion to the Popeye's, Brunet and Marshall began searching for the guns and clothes. They followed a trail left in the dew in the grass to the I-610 overpass. In a small recess they found a sawed-off shotgun, a .22 caliber revolver, and Taurus revolver, a blue jean jacket, a blue sweatshirt, two caps and two bandanas. Johnson, Bailey and Chevious identified the clothes as the ones worn by the robbers.
Detective Rudolph Fascio of the Robbery Division went to the scene. After informing the defendant and his companion of their Miranda rights, Fascio obtained a confession from the defendant. The defendant told Fascio "You got me. You got me right." The defendant further stated that he tried to rob the Popeye's but that all he got was the security guard's gun. He also said that he and his companion threw their clothes and the gun down by the railroad tracks.
Isiah Noah testified that he and the defendant were together until 2:15 a.m. when he went to pick up defendant's girlfriend. He stated that they met again fifteen to thirty minutes later at a bar called the End Zone which was near the Popey's. Noah testified that the defendant wore a white T-shirt and blue jeans. He stated that they stayed at the End Zone for about fifteen minutes and then he left the defendant there while he took the defendant's girlfriend home.
Eleanor Davis, the defendant's girlfriend, testified that she had been with the defendant until 2:30 a.m. She stated that *321 he wore a T-shirt and blue jeans and did not wear a jacket.
A review of the record reveals no errors patent.[2]

Assignment of Error No. 1
In his first assignment of error, the defendant complains that the trial court erred in denying his motion to suppress his identification. He argues that the identification procedure used was overly suggestive under the circumstances.
In challenging an out-of-court identification procedure as to its constitutionality and, hence, its admissibility in court, "the defendant must prove that the identification was suggestive and that a likelihood of misidentification resulted from the identification procedure." State v. Guillot, 526 So.2d 352, 355 (La.App. 4th Cir.1988), writs denied, 531 So.2d 471, 481 (La.1988). See also Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Prudholm, 446 So.2d 729 (La.1984).
In Manson v. Brathwaite, supra, the U.S. Supreme Court set forth five factors to be considered in determining whether an identification was reliable:
(1) The witness's opportunity to view the defendant at the time the crime was committed;
(2) The degree of attention paid by the witness during the commission of the offense;
(3) The accuracy of any prior description;
(4) The level of the witness's certainty at the time of the identification; and
(5) The length of time elapsed between the crime and the identification.
Even if a suggestive identification procedure is proven, it is the likelihood of misidentification, and not the existence of suggestiveness, which violates due process. Manson, supra; State v. Williams, 375 So.2d 364 (La.1979); State v. Muntz, 534 So.2d 1317 (La.App. 4th Cir.1988).
A one-on-one confrontation between a suspect and a victim is permissible when justified by the circumstances, particularly when the suspect is apprehended within a relatively short time after the offense and is returned to the crime scene. State v. Everridge, 523 So.2d 879 (La.App. 4th Cir. 1988). A proper identification in such cases promotes accuracy and expedites the release of innocent suspects. State v. Williams, 420 So.2d 1116 (La.1982); State v. Clark, 499 So.2d 332 (La.App. 4th Cir. 1986).
In State v. Alvin Valentine, 570 So.2d 533 (La.App. 4th Cir.1990), a man, wearing a ski mask, either blue warm-up pants or a jumpsuit, a red shirt with the word "Maze" and a picture on it and a mesh shirt over the red shirt, robbed a restaurant. The victims called the police; and shortly thereafter a state trooper who heard the broadcast of the robbery saw the defendant two blocks from the scene of the robbery. The defendant wore a red shirt with the word "Maze" and a picture on it and blue jean shorts. The defendant was sweating and breathing heavily. The trooper detained the defendant until the police arrived, and the police took the defendant to the scene to be identified by the two victims. The victims separately viewed the defendant who was seated in the back of the police car. One of the victims said that she could identify the defendant mainly because of the red shirt; but the other witness stated that he identified the defendant because he had seen the defendant in the same clothes as the robber in front of the restaurant just prior to the robbery. This court upheld the identification of the defendant because there was no showing of unreliability or suggestiveness.
In the instant case, the trial court did not err in denying the motion to suppress the identification. Both Johnson and Bailey saw the faces of the robbers as they pulled down their bandanas when they ran from the scene. Johnson saw a medallion hanging over the shoulder of one of the robbers, and he identified it as the medallion worn by Juan Matthew. Defendant and Matthew *322 were apprehended a short distance from the scene within fifteen minutes of the robbery. Johnson, Bailey, and Chevious were able to positively identify the defendant as one of the robbers even though Chevious recognized the defendant and Matthew mainly by their pants.
The trial court correctly denied the motion to suppress, and this assignment of error is without merit.

Assignment of Error No. 2
In his second assignment of error, the defendant complains the trial court erred in not suppressing his confession. He argues that the State failed to prove that either Sergeant Johnson or Detective Fascio informed him of his constitutional rights prior to his confession because the testimony of the two policemen is contradictory.
The State has the burden of proving beyond a reasonable doubt that a confession was freely and voluntarily given. State v. Burkhalter, 428 So.2d 449 (La. 1983); State v. Chevalier, 458 So.2d 507 (La.App. 4th Cir.1984). When the accused is in custody, a prerequisite to the admissibility of a confession is that the accused has been advised of his constitutional rights and that he has intelligently waived those rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Benoit, 440 So.2d 129 (La. 1983); State v. Chevalier, supra. The trial court's determination that a confession was freely and voluntarily made is entitled to great weight and will not be disturbed unless it is unsupported by the evidence. State v. Benoit, supra. Furthermore, in reviewing the trial court's ruling on admissibility, its conclusions as to the credibility of the witnesses should be accorded great weight. State v. Messiah, 538 So.2d 175 (La.1988), cert. denied, Messiah v. Louisiana, ___ U.S. ___, 110 S.Ct. 880, 107 L.Ed.2d 963 (1990).
Both Johnson and Fascio testified that the defendant was advised of his right to remain silent, of his right to an attorney, and that anything he said could be used against him. Fascio denied coercing or forcing the defendant to make a confession. All of the evidence shows that the defendant freely and voluntarily confessed, and thus there is no basis for suppressing his confession. This assignment of error is without merit.

Assignment of Error No. 3
In his third assignment of error, the defendant complains the trial court erred in not ordering the State to turn over supplemental police reports in accordance with State v. Shropshire, 471 So.2d 707 (La. 1985) and its progeny. Although the defendant does not specify in his brief what he was denied, apparently he is complaining of not getting a report by Detective Fascio, assigned to the Robbery Division, regarding the confession made by the defendant at the scene. The initial incident report was prepared by Officer Marshall.
La.R.S. 44:3 sets out what exactly a defendant is entitled to obtain in the way of police reports. It provides in pertinent part:
A. Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, held by the offices of the attorney general, district attorneys, sheriffs, police departments, Department of Public Safety and Corrections, marshals, investigators, public health investigators, correctional agencies, communications districts or intelligence agencies of the state, which records are:
(4)(a) The records of the arrest of a person, other than the report of the officer or officers investigating a complaint, until a final judgment of conviction or the acceptance of a plea of guilty by a court of competent jurisdiction. However, the initial report of the officer or officers investigating a complaint, but not to apply to any followup or subsequent report investigation, records of the booking of a person as provided in Louisiana Code of Criminal Procedure Article 228, records of the issuance of a summons or citation, and records of the filing of a bill of information shall be a public record.
(b) The initial report shall set forth:

*323 (i) A narrative description of the alleged offense.
(ii) The name and identification of each person charged with or arrested for the alleged offense.
(iii) The time and date of the alleged offense.
(iv) The location of the alleged offense.
(v) The property involved.
(vii) The names of investigating officers.
(Emphasis added)
Detective Fascio was called out to the scene of the crime after the defendant and his accomplice had already been arrested. While Fascio interviewed the defendant, during which time the defendant confessed, one of the uniformed officers who had first arrived on the scene was preparing and writing the initial report. Fascio mentioned to a ranking uniformed officer that the defendant had given a statement, but did not inform the officer writing the initial report. Under La.R.S. 44:3(A)(4), the defendant was only entitled to the initial report made by the officer handling the complaint. State v. Burnes, 516 So.2d 375 (La.App. 4th Cir.1987). The initial report need only contain those items listed in the statutenothing more. The statute does not require that the initial report contain any reference to statements or confessions made at the scene by arrested subjects.
This assignment of error is without merit.

Assignment of Error No. 4
In this assignment of error, the defendant complains of the jury charges either given or not given by the trial court. He claims that a charge on credibility erroneously stated the law, that the trial court did not give "not guilty" as a responsive verdict, and that the trial court gave the jury an improper impression as to the importance of the instruction on statements by an accused. As to the charge on credibility, the defendant complains of the following:
Ladies and Gentlemen, you are the exclusive judges of the facts of the case and you find from the evidence which facts have been proved, and which facts have not been proved. For this purpose you are the sole judges of the credibility of the witnesses and the weight to be given their testimony. You are to give that degree of credence to the testimony of a witness as you are impressed by their veracity. Now in determining the credibility of witnesses, you may take into account their manner on the witness stand, the probability or improbability of their statements, the interest or the lack of interest they may have in the case, and every fact and circumstance surrounding the giving of their testimony which may aid you in weighing their statements. Now if you believe that any witness in the case has wilfully and deliberately testified falsely to a material fact for the purpose of deceiving you, then I charge you that you would be justified in disregarding the entire testimony of such witness as proving nothing and as unworthy of belief. You have the right to accept as true or reject as false the testimony of any witness accordingly as you are impressed with their veracity.
There is no merit to the defendant's argument that this charge requires the jury to take an all or nothing approach. The charge given by the trial court is virtually identical to that in State v. Prestridge, 399 So.2d 564 (La.1981). The Supreme Court held that the charge did not require the jury to take an all or nothing approach, but that it merely stated that the jury had the right to do so. The court stated that the charge, when read as a whole, was a fair statement of the jury's function as the trier of fact and judge of credibility.
The defendant next complains of the following portion of the jury charge:
Now, Ladies and Gentlemen, as you well know in the first count of the Bill of Information the defendant is accused of armed robbery and in the second count the defendant is accused of attempted armed robbery. And what I'm going to do now is go over the law with you as it applies to armed robbery, *324 attempted armed robbery, first degree robbery, attempted first degree robbery, simple robbery, and attempted simple robbery. And those are the responsive verdicts that you can consider returning in this case.
The defendant argues that the trial court failed to give the most important responsive verdict, namely "not guilty." A jury charge must be considered as a whole, and particular expressions in a charge must be considered in the context of the entire charge. State v. Motton, 395 So.2d 1337 (La.1981), cert. denied, Motton v. Louisiana, 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981).
A review of the entire jury charge shows that the trial court told the jury about returning a verdict of not guilty several times. Moreover, the verdict forms given to the jury contained the responsive verdicts, and the forms included "not guilty." There is no basis for the defendant's contention that the jury was not informed of the verdict of "not guilty." This assignment of error is without merit.
The defendant additionally complains that the trial court gave the jury an improper impression when it recalled the jury to instruct it on out-of-court statements made by an accused. The defendant argues that this gave the jury the wrong impression as to the importance of the charge.
After the trial judge charged the jury and the jurors left the courtroom, the judge realized he forgot to instruct the jury on statements, and he ordered the jury brought back to be so instructed.
In State v. McMahon, 391 So.2d 1120 (La.1980), the trial judge recalled the jury nearly three hours after instructing it to give an omitted jury charge. The Supreme Court found no prejudice to the defendant.
There is no basis for the defendant's claim that the trial judge's recalling the jury to give the omitted instruction improperly stressed that jury charge over the others previously given. It appears the trial judge promptly and properly recalled the jury to correct his omission. This assignment of error is without merit.

Assignment of Error Nos. 5 & 6
In these assignments of error, the defendant complains that the trial court erred in refusing to give a jury instruction on circumstantial evidence and that there was insufficient evidence for his conviction.
When a conviction is based upon both direct and circumstantial evidence, and the trial court has not adequately instructed the jury on the standard for circumstantial evidence, an appellate court must review the sufficiency of the evidence under the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court must resolve any conflict in the direct evidence in the light most favorable to the prosecution. The conviction should be affirmed if there are facts established by the direct evidence, and inferred from the circumstantial evidence, sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. State v. Davis, 562 So.2d 1173 (La.App. 4th Cir. 1990); State v. Bacot, 551 So.2d 29 (La. App. 4th Cir.1989).
The trial court gave no jury instructions regarding circumstantial evidence even though there was both direct and circumstantial evidence presented. The trial court erred in failing to give a jury charge on circumstantial evidence. However, even though the trial court's failure to do so was erroneous, it does not constitute reversible error if there is sufficient evidence to support the conviction. Davis, supra.
Armed robbery is the taking of anything of value which belongs to another from his person or is in his immediate control through the use of force or intimidation and while armed with a dangerous weapon. La.R.S. 14:64. Attempted armed robbery requires specific intent to commit the offense of armed robbery, combined with an act or omission tending directly towards the accomplishing of the offense. La.R.S. 14:27. The defendant does not dispute that the elements of armed robbery and attempted *325 armed robbery were sufficiently proven. What he does dispute is that the State failed to prove beyond a reasonable doubt that he was the one who committed those offenses.
The State produced sufficient evidence to prove beyond a reasonable doubt that the defendant was the one who committed the crimes charged. Both Johnson and Bailey saw the defendant's face as he pulled off his bandana. When the defendant was stopped by Officers Brunet and Marshall shortly after the robbery and close to the scene, he was out of breath, covered with grass, wet with dew, and wearing only a T-shirt even though it was a cool night. The medallion worn by the defendant's companion looked like the medallion seen by Johnson on one of the robbers. Moreover, the defendant's confession that he committed the crime was admitted into evidence. The defendant contends that the testimony of the State's witnesses was not credible. The credibility of witnesses is just one factor to be considered in reviewing the overall sufficiency of the evidence under Jackson v. Virginia, supra. State v. Mussall, 523 So.2d 1305 (La.1988). The jury obviously found the testimony of the State's witnesses credible. Viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all of the essential elements of the crimes for which the defendant was convicted, present beyond a reasonable doubt. This assignment of error is without merit.

Assignment of Error No. 7
In his seventh assignment of error, the defendant complains the trial court impermissibly restricted his cross-examination of the State's witnesses concerning the statements they made to the police. Specifically, he complains that he was not allowed to ask Bailey, Chevious and Ms. Hutchinson about having misled the police about their true addresses.
In State ex rel. Nicholas v. State, 520 So.2d 377, 380 (La.1988), the Supreme Court stated:
The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This right is secured for defendants in state as well as federal criminal proceedings. The confrontation clause of our state constitution directly affords each accused the right "to confront and cross-examine the witness against him, ..."
Confrontation means more than being allowed to confront the witnesses. Our state constitution expressly guarantees a defendant the right to cross-examine adverse witnesses. The U.S. Supreme Court cases construing the Sixth Amendment's confrontation clause hold that a primary interest secured by it is the right of cross-examination. Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject to the discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.
The three main functions of cross-examination are: (1) to shed light on the credibility of the direct testimony; (2) to bring out additional facts related to those elicited on direct; and (3) to bring out additional facts which tend to elucidate any issue in the case.
(Citations omitted)
A reading of the cross-examination of each of these witnesses does not support defendant's claim that the trial court improperly limited his cross-examination. The defendant's right of confrontation was not violated. Moreover, a trial judge has great discretion to control the extent of examination of witnesses. Nicholas, supra. There was no abuse of that discretion.
This assignment of error is without merit.

*326 Assignment of Error No. 8

In his eighth assignment of error, the defendant complains that the trial court erred in allowing the State to go beyond the permitted scope of closing argument. He argues that the State should not have been allowed to argue about the impossibility of obtaining fingerprints from a wet surface, i.e. the guns found under the I-610 overpass.
La.C.Cr.P. art. 774 provides that closing argument is to be limited to the evidence admitted, the lack of evidence, the conclusions to be drawn from the evidence or lack thereof, and the applicable law.
There was no testimony that the reason fingerprints were not lifted from the gun was because it was wet. Thus, the State could not make this argument in closing.
When the prosecution's remarks go beyond the scope permitted by Article 774, those remarks are to be considered harmless unless the reviewing court's thoroughly convinced that they inflamed the jury and contributed to the verdict. State v. Washington, 522 So.2d 628 (La.App. 4th Cir.1988), writ denied, 523 So.2d 1321 (La. 1988), cert. denied, Washington v. Louisiana, 488 U.S. 834, 109 S.Ct. 94, 102 L.Ed.2d 70 (1988).
The remarks of the prosecution concerning the lack of fingerprints on the guns due to the inability to lift fingerprints because of wetness cannot be said to have inflamed the jury and contributed to the verdict considering all of the evidence of the defendant's guilt. This assignment of error is without merit.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Juan Matthew was charged with defendant on the attempted armed robbery and armed robbery charge. The trials of the jointly indicted defendant and Matthew were subsequently severed.
[2] By defendant's ninth assignment of error, he requests a review of the record for errors patent.