ARMSTRONG, Judge.
Defendants, Norman Smith and Gerald Young, were charged with three counts of burglary of an inhabited dwelling, violations of La.R.S. 14:62.2. On December 16, 1991, a hearing was held on the defendants’ motions to suppress confessions and identification. The trial judge, after hearing the testimony of several police officers, granted defendant Young’s motion to suppress the identification.[1] The state now complains of this ruling.[2]
On September 23, 1991, at approximately 9:00 A.M., Officer Michael Melton received a call of a suspicious vehicle matching the description furnished by eyewitnesses to two previous burglaries. Officer Melton found the vehicle parked in the driveway at 6900 Yorktown Drive. The vehicle was backed into the driveway, facing the street with the hood open and the back section ajar. Defendant Gerald Young was sitting on the passenger side and was asked by Officer Melton to step from the vehicle. Officer Melton advised him that he whs under suspicion for residence burglary and asked the whereabouts of his “other buddy.” Defendant Young answered that “he was inside the house.” Other police units arrived, surrounded the house, and called for Young’s accomplice to come out of the house. Defendant Norman Smith came out after hearing that police dogs were being employed. Both suspects were handcuffed and placed in police vehicles.
Officer Jann Christensen, assigned to the district follow-up unit, was at the scene as a back-up. Officer Christensen recognized the vehicle as one which had probably been used in two other burglaries in the area. Officer Christensen contacted an eyewitness to one of the previous burglaries which had occurred on September 12, 1991 at 5240 Westlake Drive, a Mr. Clifford Washington. Officer Christensen testified at the motion to suppress hearing that she asked Mr. Washington to come to the Yorktown address to identify the vehicle but did not question him about whether he could identify the defendants. Mr. Washington also testified that he was called by the police to the Yorktown Drive address to identify the vehicle. However, as he was standing with police officers, beginning to give a description of the suspects he had seen at the prior burglary, defendant Young was removed from a police car to have his handcuffs changed. Mr. Washington looked over, saw Young kneeling outside the police car approximately fifty feet away, and spontaneously said, “That is one right there.” Defendant Smith testified that Mr. Washington walked past the police car, looked inside and saw him sitting in the rear seat. Mr. Washington denied seeing either defendant before he saw defendant Young outside the police car. He testified that he had observed only one suspect that day, the person who he identified in court as Young.
Officer Christensen admitted under cross-examination that she had taken a photograph of the vehicle, the police intended to impound the vehicle, and there was *415 no urgent need to have Mr. Washington come to the scene of the subsequent burglary to identify the vehicle.
A defendant has the burden of proving that the identification was suggestive and, if so, that the suggestive procedure gave rise to a “very substantial likelihood of irreparable misidentification.” Reliability is the “linchpin” in determining whether an out-of-court identification is admissible at trial. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. West, 582 So.2d 889 (La.App. 4th Cir.1991). The defendant in the present case was identified in a “one-on-one” encounter by an eyewitness to a crime which occurred eleven days earlier. This type of one-on-one confrontation between a suspect and an eyewitness is generally not favored but is permissible when justified by the overall circumstances, particularly when the accused is apprehended within a relatively short period of time after the occurrence of the crime and has been returned to the crime scene. State v. Walters, 582 So.2d 317 (La.App. 4th Cir.1991); State v. Peters, 553 So.2d 1026 (La.App. 4th Cir.1989).
The instant case is not typical of one-on-one identifications. For example in State v. Valentine, 570 So.2d 533 (La.App. 4th Cir.1990), a restaurant was robbed in the middle of the night by a man wearing a ski mask. The victims called the police and the defendant was apprehended shortly thereafter, only two blocks from the scene of the robbery. The police officer took the defendant to the scene to be identified by the two victims. The victims separately viewed the defendant who was seated in the back of the car. This Court upheld the identification of the defendant because there was no showing of unreliability or suggestiveness. See also, State v. Peters, 553 So.2d 1026 (La.App. 4th Cir.1989); State v. Cryer, 564 So.2d 1328 (La.App. 4th Cir.1990); State v. Smith, 577 So.2d 313 (La.App. 4th Cir.1991); State v. Muntz, 534 So.2d 1317 (La.App. 4th Cir.1988).
In the instant case, however, police officers did not ask the eyewitness to identify the defendant, but rather asked him to identify a vehicle he had previously described. Unlike the typical one-on-one identification, police officers in this case did not intend for the eyewitness to view the defendant. Unlike most on-the-scene street identifications, here the officers did nothing to intentionally direct the witness’s attention to the defendant for purposes of identification. They did nothing to “suggest” that Young was the person who had participated in the earlier burglary.
The instant case is also unlike many other cases in that the delay between the witness’s observation of the suspect and the one-on-one identification was eleven days. But, in State v. Everridge, 523 So.2d 879 (La.App. 4th Cir.1988), there was a delay of two days. The victim was robbed of her van at gunpoint. Two days later, the victim’s husband received a telephone call from someone who had found the stolen van. The victim’s husband located the van and notified the police. Police responding to the call chased the van and apprehended the driver. While the police were conducting an investigation at the scene, the victim’s husband called the victim and arranged for her to come to the scene to see if the driver of the van was the man who had robbed her. The victim arrived shortly thereafter and identified the defendant. This Court stated, “Although the confrontation in this case occurred two days after the crime, which is longer than the usual delay for a one-on-one identification, the overall circumstances of this case indicate that this identification was neither suggestive nor was there a substantial likelihood of misidentifi-cation.... Furthermore, a key factor in determining if this identification was not suggestive is that Mr. Pace summoned his wife to the scene where the defendant was apprehended, which was unknown to the police officers.” Everridge, at 881.
Nevertheless, considering all of the facts of this case, the trial court could have reasonably found that the identification of defendant Young was suggestive, however minimal and unintentional it may have been. We now consider whether this identification procedure gave rise to “a very *416 substantial likelihood of misidentification.” Manson v. Brathwaite, supra; State v. West, supra. In Manson, the U.S. Supreme Court set forth five factors to be considered in making this determination: 1) the witness’s opportunity to view the defendant at the time the crime was committed; 2) the degree of attention paid by the witness during the commission of the crime; 3) the accuracy of any prior description; 4) the level of the witness’ certainty displayed at the time of the identification; and 5) the length of time elapsed between the crime and identification. In the instant case, Mr. Washington testified that he made eye contact several times with both defendants. Mr. Washington does not indicate how long he watched the defendants or what the lighting conditions were at the time. It appears from his testimony that he was very attentive to the two men as he was suspicious of their conduct and watched them until he contacted the police. However, it is not known what description Mr. Washington gave the police as he testified that the description furnished was given by the police officers while standing outside the residence at Yorktown Drive. It appears that Mr. Washington’s identification was quite certain of defendant Young. The length of time between the crime and the confrontation is longer than the period found in most cases. It does not appear, however, that the lapse of eleven days between the burglary on Westlake Drive and Mr. Washington’s identification had any “corrupting effect” on Mr. Washington’s ability to identify defendant Young.
Considering these five factors, it cannot be said that as a result of this very minimal, if at all, suggestive identification procedure, there was “a very substantial likelihood of misidentification.” The trial court erred in granting defendant Young's motion to suppress the identification.
For the foregoing reasons, we grant relator’s application for writs, reverse the judgment of the trial court, and remand this case for further proceedings.
WRIT GRANTED; JUDGMENT REVERSED; REMANDED.

. The trial court apparently found that the witness in question observed and identified only defendant Young.

. On January 9, 1992, this court issued an order requesting defendant to file a response to relator’s application for relief on or before January 15, 1992. In the order we informed the parties that the case would be marked submitted on the briefs and record as of January 29, 1992. Defendant failed to file a response.