725 So.2d 23 (1998)
STATE of Louisiana
v.
Eugene SHORT.
No. 96-KA-2780
Court of Appeal of Louisiana, Fourth Circuit.
November 18, 1998.
Dwight Doskey, Sherry Watters, Orleans Indigent Defender Program, New Orleans, Louisiana, for Eugene Short/Appellant.
Harry F. Connick, District Attorney of Orleans Parish, Joseph E. Lucore, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, for The State/Appellee.
*24 Court composed of Chief Judge PATRICK M. SCHOTT, Judge DENIS A. BARRY, Judge ROBERT L. LOBRANO.
BARRY, Judge.
Defendant appeals his conviction for purse snatching and sentence as a third offender under the multiple offender statute. We affirm.
The defendant was charged with simple robbery, La. R.S. 14:65, and purse snatching, La. R.S. 14:65.1. On July 17, 1996 a jury found him guilty as charged. The State filed a multiple bill on the purse snatching conviction to which defendant pled not guilty. The court found him to be a third offender under La. R.S. 15:529.1 and sentenced him to the mandatory minimum of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. On the simple robbery conviction defendant was sentenced to seven years at hard labor, to run concurrently. Defendant's motion for reconsideration of sentence was denied. Defendant argues: (1)the evidence was insufficient to prove purse snatching; (2)the evidence was insufficient to prove he was a third offender; and (3)the application of the multiple offender law to these facts is unconstitutional.

FACTS
Joseph Piazza testified that on April 21, 1996, at 6:30 a.m., he pulled into a gas station on Chef Menteur Highway to purchase gas. He took a ten dollar bill from his wallet and was waiting to give it to the cashier through the station's window. He held his wallet in his other hand. He noticed the defendant standing nearby. The defendant approached him, grabbed his hand and pulled it behind his back, took his wallet from his hand, then jumped into a nearby car and sped away. Piazza called the police who arrived in a few minutes. Later that day Piazza went back to the gas station to leave his phone number because he was concerned about retrieving his driver's license and other cards if the wallet was found. A woman at the gas station told him the perpetrator had been apprehended when he tried to commit a similar crime. She told Piazza to go to the police station. When he arrived at the station a policeman recognized him, called him to a police car, and asked if the man in the back seat of the police car (the defendant) was the one who had stolen his wallet. Piazza identified the defendant and his clothes.
Piazza's wife, Helen, testified she was present when the defendant took her husband's wallet. She was not at the police station when her husband identified the defendant, but she identified him at trial.
Lee Porter Booth testified that on April 21, 1996 at 7:45 a.m. he was at the Owl Food Mart in Gentilly when the defendant approached and asked him if he wanted to buy food stamps. Booth took money out of his pocket, but the defendant did not produce the food stamps. Booth began to walk away and the defendant rushed him from behind, tore the pocket into which Booth had put his money, and took more than $30.00. Later that day Booth's wife called and told him the police had a suspect. He went to her house and identified the defendant sitting in the back of the police car.
Officer Darryl Payne said he answered the call of the Piazzas. The gas station cashier, Teshier Terrell, said that the defendant had been hanging around the gas station all night, and that he had left a bag of clothes nearby. Soon after Payne received a call of a suspicious person nearby. He went to the location and saw the defendant who matched the description. He put him into the back of the police car to question him. Several people surrounded the car and reported that the defendant was the man who had just robbed Joseph Piazza. Then an elderly black man appeared with his family and told Payne that the defendant had beaten the elderly man up "in a scheme involving food stamps." Payne transported the defendant to the police station where Piazza identified him.
The defendant's brother, Charles Casabon, testified he spent the entire night of April 20 and the early morning hours of April 21 drinking with the defendant. He said the defendant had feuded with Booth when Booth failed to produce all of the money for the food stamps, so "[the defendant] took it upon himself just to take the money from *25 him." He said that another man, Elliot Sneads, had been drinking with them all night. Sneads and the defendant were both wearing a green shirt which all the employees of the company defendant worked for were required to wear. He said other men in the area were also wearing the same shirts. When the police arrived, Sneads ran. He said the police did not arrest the defendant until they learned of his record. However, he admitted the gas station where Piazza was robbed is right across the street from the Owl Food Mart where the defendant took Booth's money. Casabon said he believed Piazza had misidentified his brother. He said that he and the defendant had not been driving a car.
Terrell Rhodes, the defendant's uncle, testified he arrived at the Owl Food Store to pick up the defendant around 8:00 or 8:30 a.m. He saw the defendant arguing with Booth over the food stamps and heard the defendant say that Booth owed him money. He tried to dissuade the defendant from arguing further and then left the scene. He said he could tell that the men had been out all night, and he knew the defendant was a drug user. He tried to get the defendant to leave the scene because the defendant had just gotten out of the penitentiary and he feared defendant would be sent back.

SUFFICIENCY OF EVIDENCE OF PURSE SNATCHING
The defendant argues the evidence was insufficient to support the crime of purse snatching. When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La. 1987).
R.S. 14:65.1 defines the crime of purse snatching as
the theft of anything of value contained within a purse or wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon.
Joseph Piazza testified the defendant snatched his wallet containing his driver's license and credit cards from his hand. Later defendant was apprehended a short distance away after he had attempted a similar crime, and witnesses on the scene told Officer Payne that the defendant was the man who had taken Piazza's wallet. The defendant argues that Piazza was not certain of his identification because Piazza identified him by what he was wearing. However, there is no evidence to suggest that Piazza recognized the defendant solely by his clothing. Piazza said the man in the back of the police car was the thief. He also identified him at trial as did his wife Helen.
Defendant points out that the gas station cashier told Piazza the police had arrested the perpetrator and that Piazza had identified him as he sat in the police car. This argument implies that one-on-one identifications are inherently suggestive. A "one-on-one" confrontation between a suspect and the victim is generally not favored, but is permissible when justified by the overall circumstances, particularly when the accused is apprehended within a relatively short time of the crime and has been returned to the crime scene. State v. Walters, 582 So.2d 317 (La.App. 4th Cir.1991); State v. Peters, 553 So.2d 1026 (La.App. 4th Cir. 1989). These identifications have been upheld because prompt confrontation between a defendant and victim promotes fairness by assuring the reliability of the identification (while the victim's memory is fresh) and the expeditious release of innocent suspects. State v. Robinson, 404 So.2d 907 (La.1981); State v. Muntz, 534 So.2d 1317 (La.App. 4th Cir.1988); State v. Jackson, 517 So.2d 366 (La.App. 5th Cir.1987).
In State v. Valentine, 570 So.2d 533 (La. App. 4th Cir.1990), a restaurant was robbed in the middle of the night by a man wearing a ski mask. The victims called the police and the defendant was apprehended shortly thereafter two blocks from the robbery. The police officer took the defendant to the scene to be identified by the victims. The victims *26 separately viewed the defendant who was seated in the back of the car. This Court upheld the identification of the defendant because there was no showing of unreliability or suggestiveness. See also, State v. Cryer, 564 So.2d 1328 (La.App. 4th Cir.1990); State v. Smith, 577 So.2d 313 (La.App. 4th Cir. 1991); State v. Peters, 553 So.2d 1026 (La. App. 4th Cir.1989); State v. Muntz, 534 So.2d 1317 (La.App. 4th Cir.1988).
The United States Supreme Court has named five factors which should be considered in determining whether a suggestive identification gave rise to a substantial likelihood of misidentification: 1) the victim's opportunity to view the defendant at the time the crime was committed; 2) the degree of attention paid by the victim during the commission of the crime; 3) the accuracy of any prior description; 4) the level of the victim's certainty displayed at the time of the identification; and 5) the length of time elapsed between the crime and identification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
Piazza saw Officer Payne sitting in his car outside the police station and recognized him as the officer who had responded to his call at the gas station. Piazza had ample opportunity to view the defendant when he committed the crime. He noticed the defendant before the crime occurred and turned to see him snatch the wallet. Piazza gave an accurate description of the defendant's clothes. He was certain of his identification. Only a few hours passed between the crime and the identification.
The evidence was clearly sufficient to support a conviction for purse snatching.

SUFFICIENCY OF EVIDENCE OF THIRD OFFENDER STATUS
The defendant argues that the State failed to prove that he was a third offender because it introduced a copy of his earlier guilty plea to simple robbery that did not contain his fingerprints.
The defendant's two prior convictions were a guilty plea to simple robbery entered on February 27, 1992, (353-022"A"), and a guilty plea to possession of marijuana with intent to distribute entered on June 27, 1987, (318-301"J"). At the multiple bill hearing Officer Keith Arnold, a fingerprint expert, stated that he had taken the defendant's fingerprints in court that day. He identified the arrest registers of the two previous arrests and stated that the fingerprints on the back of those registers matched those of the defendant. The State then introduced copies of the two guilty pleas, and the court examined them and found adequate Boykinization.
Following the Louisiana Supreme Court decision in State v. Shelton, 621 So.2d 769 (La.1993), the legislature amended La. R.S. 15:529.1(D)(1)(b) to place the burden of challenging a predicate conviction in a multiple bill proceeding on the defendant. That subsection now provides, in pertinent part:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack a sentence.
The defendant did not file a written response to the habitual offender bill of information complaining of any of the prior convictions. Accordingly, his argument that the State did not produce sufficient proof of the prior convictions was not preserved for appeal. State v. Cossee, 95-2218 (La.App. 4th Cir.7/24/96), 678 So.2d 72.

CONSTITUTIONALITY OF MULTIPLE OFFENDER LAW
The defendant argues the multiple offender law is unconstitutional as applied in *27 this case. He suggests that the 1995 amendment to La. R.S. 15:529.1[1], which provides for a mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence for a third offender if any of the three crimes is a violent crime under La. R.S. 14:2(13), is constitutionally excessive.
Although the Louisiana Supreme Court has not specifically considered the constitutionality of the statute as amended, in State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676, the Court stated (post amendment): "Since the Habitual Offender Law in its entirety is constitutional, the minimum sentences it imposes upon multiple offenders are also presumed to be constitutional," citing State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Young, 94-1636 (La.App. 4th Cir.10/26/95), 663 So.2d 525. The Court noted that the legislature's determination of an appropriate sentence should be afforded great deference, and that the courts are not without power to declare a minimum sentence excessive under Dorthey. The defendant bears the burden of rebutting the presumption that the mandatory minimum sentence is constitutional.
The defendant was convicted of one count of simple robbery and one count of purse snatching. He has prior felony convictions of simple robbery and possession of marijuana with intent to distribute. The statute mandates a life sentence if one of the convictions is for a crime of violence. In this case the defendant has been convicted of three offenses defined as "violent" crimes by La. R.S. 14:2(13). The defendant failed to meet his burden of proving that the mandatory minimum sentence is unconstitutional.
Accordingly, we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] Acts 1995, No. 1245, §1.