11 Judge STEVEN R. PLOTKIN.
The issue in this appeal is whether the trial court erred in failing to impose a life sentence.
PROCEDURAL HISTORY
The defendant, Jerry Lewis, was charged by bill of information with four counts of armed robbery, two counts of attempted armed robbery, and possession of a firearm by a convicted felon. Three counts of armed robbery, counts three, six and seven of the bill of information, were tried by a jury. Lewis was found guilty as charged on each count. The trial court sentenced the defendant to thirty years at hard labor without benefit of parole, probation, or suspension of sentence as to each count; the sentences are to run concurrently. Lewis appealed, and in an unpublished opinion this Court affirmed his convictions and sentences. State v. Lewis, 2002-0078 (La.App. 4 Cir. 7/17/02, 826 So.2d 662).
The state filed a multiple bill, charging Lewis as a third felony offender, and after a hearing Lewis was sentenced on count three to sixty-six years at hard labor under La. R.S. 15:529.1(A)(l)(b)(i). The state objected to the sentence, and its motion for an appeal was granted.
^STATEMENT OF FACTS
The facts of the case as presented in the earlier appeal are as follows:
On 22 May 2000, Kenneth Smith, the victim, was entering his Burgundy Street home when a subject came from across the street with a gun. The assailant pointed a gun at Mr. Smith and told him not to yell. He asked for money, and Mr. Smith gave him what he had in his front pocket. The perpetrator patted the victim’s pockets and told him to retrieve his wallet. The victim opened his wallet and showed the gunman that it did not contain any money. The gunman then requested the victim’s watch. Mr. Smith removed it and handed it to the gunman, who then told Mr. Smith to go into his house.
Mr. Smith described the perpetrator as being five feet eleven inches tall, 170 pounds, medium complexion with short hair. Mr. Smith believed he was an older person and that he had missing teeth.
On 7 June 2000, Michael McDonald and Brian Thompson were walking on Mandeville Street near the intersection of Burgundy Street. A subject was walking on the opposite side of the street, who then crossed over and began walking in their direction. When the perpetrator was some four to five feet in front of the two he suddenly stopped, and Mr. McDonald realized he had a *530 gun. The perpetrator told them to give him their money. Mr. McDonald gave the assailant his pocket change. ■ Mr. Thompson opened his billfold and threw a few dollars onto the ground. The perpetrator demanded that he pick up the money, but he refused. Mr. McDonald then picked up the money and gave it to the robber. While Mr. McDonald was retrieving the money from the ground, the perpetrator put his gun in Mr. Thompson’s back and checked his pockets. The perpetrator .then told the two to turn around and start walking and not to look back. After going only a few paces, Mr. McDonald realized that his friend had stopped and turned around. Mr. McDonald then heard a gunshot and he ducked and hid behind a car. He then tried to grab and pull Mr. Thompson down. Mr. Thompson testified that when the perpetrator was in the middle of Mandeville Street, he turned and fired a shot at he and Mr. McDonald. Mr. Thompson hid behind a tree. At that point, the perpetrator began running, and Mr. Thompson chased after him briefly.
Mr. McDonald described the perpetrator as being older, or approximately fifty years old, with a large belly, very bad teeth, and wearing a New York Yankees baseball hat.
On 13 June 2000, Detective Harrison Gordon and his partner were on patrol in the Faubourg-Marigny section of New Orleans when Detective Gordon saw the defendant discard a handgun and a baseball |scap to the ground as the officers approached. The defendant was immediately detained, and the gun and hat were recovered.
Detective David Hunter, assigned to the Fifth District robbery squad, conducted the follow-up investigation of the McDonald/Thompson robbery. Detective Hunter learned of the defendant’s arrest and because Lewis fit the description of the perpetrator and was in possession of a New York Yankees baseball cap, he compiled a photographic lineup. Upon viewing the lineup, both victims positively identified the defendant. At trial, both victims identified Lewis as the man who robbed them.
On 15 June 2000, Detective Chris Cam-biotti compiled a photographic lineup containing the defendant. Detective Cambiotti showed the lineup to Mr. Smith at Mr. Smith’s home, and he positively identified Lewis as the man who robbed him. Mr. Smith also identified Lewis at trial.
State v. Lewis, 2002-0078, pp. 1-3, 826 So.2d 662.
ASSIGNMENT OF ERROR
The state appeals Lewis’s sentencing as a third felony offender under the amended version of La. R.S. 15:529.1(A)(l)(b), which became effective June 15, 2001. The state maintains that the trial court erred in sentencing Lewis in accordance with the law in effect on the date of sentencing rather than on the date of the offense.
On September 21, 2000, the date Lewis was charged, La. R.S. 15:529.1(A)(l)(b) provided:
If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
(i) the person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction; or
(ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under *531 La. R.S. 14:2(13) ... the person shall be imprisoned for the | remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
After June 15, 2001, La. R.S. 15:529.1(A)(1)(b)(ii) was amended to provide:
(ii) If the third felony and the two prior felonies are felonies defined as a crime of violence under La. R.S. 14:2(13) ... the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Lewis’s third felony, armed robbery, is a crime of violence under La. R.S. 14:2(13)(w). His prior offenses are simple robbery, in violation of 14:64.1, and carrying a concealed weapon second offense, in violation of La. R.S. 15:95(C). First-degree robbery is a crime of violence under La. R.S. 14:2(13)(y). Thus, two of Lewis’s three felonies are crimes of violence, and his offenses do not fall under the amended provision of La. R.S. 15:529.1(A)(1)(b)(ii).
At the hearing when the judge pronounced the sentence, the state objected, and the judge responded, “I’m not going to do life. I’m not going to say life. You all can take me up on that.” Thus, the judge deliberately sentenced Lewis to a lesser term than that mandated by La. R.S. 15:529.1(A)(1)(b)(ii) prior to its amendment.
The State argues the court erred in imposing the sentence based upon amendments to La. R.S. 15:529.1 which were not applicable to this case. This Court addressed this issue recently in State v. Houston, 2002-0255 (La.App. 4 Cir. 4/24/02), 818 So.2d 253, where this Court held that the 2001 amendments to La. R.S. 15:529.1 embodied in Acts 2001, No. 403, are to have prospective application Isonly.[1] “It is well settled that the penalty set out in a statute at the time of offense applies. State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99. The fact that a statute is subsequently amended to lessen the possible penalty does not extinguish liability for the offense committed under the former statute. State v. Narcisse, 426 So.2d 118 (La.1983).” Id. at 255.
Because the amendments to La. R.S. 15:529.1 became effective after Lewis committed his most recent offense, we find the amendments do not apply to this case. Thus, the trial court erred in sentencing Lewis to the sixty-six year sentence rather than life imprisonment.
In his brief the defendant, through counsel, contends that the trial court chose to deviate from the statutorily mandated life sentence because that sentence is constitutionally excessive. Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the needless and purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Lobato, 603 So.2d 739 (La.1992); State v. Telsee, 425 So.2d 1251 (La.1983).
*532 The minimum sentences under the Habitual Offender Law are presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. The defendant bears the burden of rebutting the presumption that the mandatory | fiminimum sentence is constitutional. State v. Short, 96-2780 (La.App. 4th Cir.11/18/98), 725 So.2d 23. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular ease before it that would rebut the presumption of constitutionality. State v. Johnson, 97-1906 at p. 7, 709 So.2d at 676.
In State v. Ricks, 2002-1126 (La.App. 4 Cir. 7/10/02), 823 So.2d 441, (J. McKay, dissenting), this Court considered a case in which the defendant, convicted of distribution of cocaine, was sentenced under State v. Dorthey, 623 So.2d 1276 (La.1993), as a second offender to serve ten years at hard labor. The state appealed the downward departure in the sentence, and this Court stated:
In State v. Lindsey, 99-3256 pp. 4-5 (La.10/17/00), 770 So.2d 339, 342-43, cert. denied, 532 U.S. 1010, 121 S.Ct. 1739 (2001), the Louisiana Supreme Court summarized the current jurisprudence relating to the issue of sentencing below the statutory minimum of the multiple offender law. The court held that the habitual offender statute was constitutional, and that the mandatory minimum sentences contained therein should be enforced unless unconstitutionally excessive under Article I, Section 20 of the Louisiana Constitution. The standard set forth in the Dorthey case requires affirmance of the statutory sentence unless it makes no measurable contribution to acceptable goals of punishment or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. A trial court may depart from the statutory minimum sentence only where there is clear and convincing evidence that would rebut the presumption of constitutionality, and such cases are rare. If a trial judge finds such evidence, he is not free to sentence to defendant to whatever sentence he feels is appropriate, but is bound to sentence him to the longest sentence that is not constitutionally excessive. See, Lindsey, pp. 4-5, 770 So.2d at 342-43.
State v. Ricks, 823 So.2d at 444. In Ricks although the trial court gave reasons for the lesser sentence, this Court-found a lack of clear and convincing evidence that the defendant was exceptional and that the mandated sentence was excessive as to him.
|7In the instant ease, the defendant does not attempt to show that his sentence is excessive given his particular circumstances. Furthermore, nothing in the record or in the facts of the case suggests any mitigating circumstances in this case. Thus, a life sentence in this case is not constitutionally excessive.
CONCLUSION
Accordingly for reasons stated above, the defendant’s sentence on count three is vacated, and the case is remanded for re-sentencing in accordance with this opinion.
VACATED AND REMANDED.

. In Houston the defendant, convicted of possession of cocaine, was adjudicated a fourth felony offender. One of his prior felonies was distribution of cocaine, a violation of the Controlled Dangerous Substances Law punishable by more than five years that fell under La. R.S. 15:529.l(A)(l)(b)(ii), prior to its amendment, and mandated a sentence of life imprisonment without benefit of probation, parole or suspension of sentence.