619 So.2d 1102 (1993)
STATE of Louisiana
v.
Leroy JOHNSON.
No. 92-KA-0731.
Court of Appeal of Louisiana, Fourth Circuit.
May 13, 1993.
Rehearing Denied June 28, 1993.
*1104 Harry F. Connick, Dist. Atty. of Orleans Parish, David L. Arena, Asst. Dist. Atty. of Orleans Parish, New Orleans, for plaintiff/appellee.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant/appellant.
Before KLEES, BYRNES and WALTZER, JJ.
WALTZER, Judge.
The defendant was charged by bill of indictment with aggravated rape and aggravated burglary on October 19, 1989. Motions to suppress identification and evidence were denied on January 31, 1990. The defendant was released by the sheriff's office prior to trial. When the defendant failed to appear on his trial date of May 16, 1990, a capias was issued for his arrest. Subsequent to the defendant's rearrest on July 17, 1991, the defendant filed a motion to quash the indictment, alleging that the time limitation for prosecution of the offense had run. That motion was denied after hearing on November 7, 1991. A jury trial was held January 21-23, 1992. The jury found the defendant guilty as charged on both counts. The trial court sentenced the defendant to life imprisonment without parole as to the aggravated rape and twenty-five years at hard labor as to the aggravated burglary, to run concurrently. Defendant appeals.

*1105 THE FACTS AT TRIAL

On September 22, 1989, at about 2:31 a.m., Lieutenant Alvin Dufrene of the New Orleans Police Department was called in to investigate a rape charge. He responded to the 1800 block of Whitney Court where he spoke with the victim, who gave a description of the perpetrator as a black male in his thirties, approximately 5'7", muscular build, a nappy Afro bush, with a mustache and goatee, wearing a pink sleeveless muscle shirt and tan bell-bottom trousers, dark-skinned, and armed with a small silver-colored handgun. Lt. Dufrene broadcast the description over the police radio.
At about 2:35 a.m. that same evening, Police Officers Bass, Heindel and Thompson had placed a roadblock in the 1800 block of Thayer Street, two blocks behind the victim's apartment, in connection with an unrelated narcotics traffic stop. When the defendant was told he had to wait at the roadblock, he jumped out of his car and pointed a .25 caliber automatic handgun at the officers. The officers, who at that time knew nothing about the rape, arrested the defendant for the aggravated assault committed upon them.
Within minutes of Lt. Dufrene's dispatch with the rape perpetrator's description, there was a call from the officers involved in the aggravated assault reporting that they believed they had the perpetrator. The officers then transported the defendant to the Fourth District Station. Detective Puigh, the rape detective assigned to the case, brought the victim to the station where she immediately and positively identified the defendant as the perpetrator.
The victim testified that she awoke in the middle of the night when the defendant jumped on top of her. It was dark when she awoke, although she leaves her kitchen and bathroom lights on overnight for her children. The victim struggled with the defendant, even after he told her he had a gun, and managed to push the defendant off and get out of her bedroom. However, because of the darkness, she ran into a chest in the hallway and hurt her shoulder, which prevented her escape. The defendant then grabbed the victim around the throat and put a gun to her head. She convinced the defendant to let her check on her children. She put the light on in her children's room and looked into the defendant's face. The defendant realized that the victim was looking at him and turned the light off. He then dragged her to the sofa in the living room, where he pulled up her nightgown and raped her.
The victim called 911 and Lt. Dufrene and Det. Puigh responded. She mentioned to Det. Puigh that the defendant called her by name, although she had never met him. Det. Puigh suggested that the defendant might have seen her driver's license and asked the victim where her purse was. The victim then noticed that her purse was not where she left it. She testified that she carries a lot of change because she is a special education teacher and she travels with her students on the bus to teach them how to catch a bus and how to make change. She checked the contents of her purse and saw that all her change was gone. Det. Puigh then brought the victim to the Fourth District Police Station where she identified the defendant.
At the trial, Dr. Kenneth Lum testified that he performed the medical examination on the victim. He found no particular trauma to the vaginal area; but did find a significant amount of motile sperm indicating intercourse within six (6) to eight (8) hours of the exam, and contusions of the left shoulder and right leg.
Medical technologist Patricia Daniels and criminalist Charles Krone both testified that the evidence from the rape kit did not single out the defendant as the perpetrator of the rape. They also testified that no DNA or other testing was ordered which would have narrowed the possible suspects or eliminated the defendant as one of them.
The defendant's brother, Emmanuel Johnson, testified that the defendant did construction work for him that day and was given an advance in pay before he left at about 7:00 p.m. Cynthia Peterson, a former girlfriend of the defendant, testified that on the night in question the defendant came to her sister's house on Bouny Street near the Canal Street ferry where they *1106 watched TV and then had sex for about two hours. Ms. Peterson's sister arrived home earlier than expected, around 2:00 a.m. The defendant then dressed, washed up and left at about 2:05 a.m. Ms. Peterson testified that the defendant was wearing an unbuttoned yellow shirt with a sleeveless pink undershirt and brown pants when he left.
Det. Heindel testified that the distance from the Canal Street ferry and Bouny area was 1.8 miles from the Whitney and Thayer area and can be travelled at a normal rate of speed in five minutes.

ERRORS PATENT REVIEW
A review of the record for errors patent review reveals that there were none.

MOTION TO SUPPRESS THE IDENTIFICATION
The defendant avers that the identification procedure by which the victim identified him was unduly suggestive and denied him due process. Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. West, 582 So.2d 889 (La. App. 4th Cir.1991).
The defendant in the present case was identified by the victim in a "one-on-one" encounter which occurred only a short time after the crime. This type of confrontation between a suspect and the victim is generally not favored but is permissible when justified by the overall circumstances, particularly when the accused is apprehended within a relatively short period of time after the occurrence of the crime and has been returned to the crime scene. State v. Walters, 582 So.2d 317 (La.App. 4th Cir.1991), writ den., 584 So.2d 1171 (La.1991); State v. Peters, 553 So.2d 1026 (La.App. 4th Cir.1989). These identifications have been upheld because prompt confrontation between the defendant and the victim promotes fairness by assuring the reliability of the identification (while the victim's memory is fresh) and the expeditious release of innocent suspects. State v. Robinson, 404 So.2d 907 (La.1981); State v. Muntz, 534 So.2d 1317 (La.App. 4th Cir.1988).
If a court finds that the identification procedure was suggestive, five factors should be considered in determining whether the suggestive procedure gave rise to a substantial likelihood of misidentification. Those factors are: 1) the victim's opportunity to view the defendant at the time the crime was committed; 2) the degree of attention paid by the victim during the commission of the crime; 3) the accuracy of any prior description; 4) the level of the victim's certainty displayed at the time of the identification; and 5) the length of time elapsed between the crime and identification. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Manson v. Braithwaite, supra.
In State v. Martin, 595 So.2d 592 (La. 1992), the Louisiana Supreme Court found an identification procedure was suggestive, where only a single photograph was used, and unnecessary, because it occurred one month after the offense and no exigent circumstances existed. Having determined that the single-photograph identification was both suggestive and unnecessary, the court turned to the Biggers factors and determined that the witness's ability to make an accurate identification was significantly outweighed by the corrupting effect of the single photograph identification. The court thus found that there was a substantial likelihood of misidentification and reversed the conviction.
In the present case, the only factor which indicates that this identification procedure was suggestive is the fact that the victim was brought to the police station to identify a single suspect. Defense trial counsel attempted to show that because the defendant was in custody on other charges, the police could have waited to do a full line-up or a photo line-up with more than one subject. However, Det. Puigh testified that there were exigent circumstances which prevented delaying the identification until a regular line-up could be had. He testified that the charge for which the defendant had been arrested was a misdemeanor which would carry a very small bond, on which the defendant could possibly be released. He further testified that *1107 he could not hold the defendant on the rape charge without an identification. He thus felt a one-on-one identification that evening was proper and avoided the risk that the suspect would be released before the full line-up could be arranged for the following day.
Because a one-on-one identification, by its very nature, is suggestive; the court should consider the Biggers factors to determine whether the suggestive procedure gave rise to a substantial likelihood of misidentification. The victim testified that she turned on the light in her children's room, then looked directly at her attacker, not at her children. Although the victim was not wearing her eyeglasses, she explained that she is nearsighted so she only has difficulty seeing far away objects. Her opportunity to view the defendant at the time of the crime and the degree of attention she paid to the appearance of the defendant was therefore considerable. The description given by the victim to the investigating officers was extremely detailed and accurate. The victim was positive in her identification. Finally, only an hour elapsed between the commission of the crime and the identification. Considering those factors, there is no substantial likelihood of misidentification.
The assignments relative to the denial of the motion to suppress identification and the admission of the identification are without merit.

MOTION TO SUPPRESS EVIDENCE
The defendant contends that the trial court erred when it permitted the state to incorporate evidence and testimony from an illegal arrest and conviction into the record in the instant case. He further contends that defense counsel erred for failure to object to the admission of this evidence and testimony.
The record and transcripts indicate that the defendant's pre-trial motions and his trial on the related aggravated assault case were heard on January 31, 1990, before the same judge and with the same counsel for the defense. It is clear from the transcript of the motion to suppress evidence that the trial on the aggravated assault occurred first. The state then requested and, over the objection of counsel, was permitted to incorporate the testimony taken in that trial into the motion to suppress evidence, not the trial on the merits of the rape charge.[1]
At the aggravated assault trial Officers Robert Heindel, Donald Bass, and Emmett Thompson testified that they were conducting a narcotics investigation in plainclothes and an unmarked car when the defendant approached and told them to get out of the way. Officer Bass told him they would move as soon as they were finished. The defendant then shouted for them to move or someone was going to get hurt. When the officers continued their investigation, the defendant shouted at them again. At that point, the officers noticed the defendant had a weapon pointed at them. They identified themselves as police and yelled at the defendant to drop his gun. The defendant hesitated and slightly lowered his gun. The officers then charged the defendant, jamming him between the car door and the car. They apprehended the defendant and retrieved his gun and five rounds of ammunition from his car. The court found the defendant guilty of three counts of aggravated assault, one count as to each officer.
The officers all described the defendant as wearing a sleeveless pink shirt and tan pants. They also identified the defendant's weapon and a picture taken of the defendant at the scene of the arrest.[2]
*1108 The defendant further avers that the aggravated assault arrest and conviction were illegal, but fails to specify the illegality. The officers' testimony that the defendant drew a gun on them was sufficient probable cause to arrest him for aggravated assault. The evidence seized and confiscated as a result of that arrest could legally be used in the assault trial and subsequent rape and burglary trial.
The conviction for aggravated assault was not incorporated into the trial of this matter. Rather, the testimony from that conviction was incorporated into the motion to suppress. In any event, the legality of the aggravated assault conviction is not before this court for review.
Because the defense was given the opportunity to cross-examine the state witnesses, who had just testified to the facts of the defendant's arrest at the aggravated assault trial; the defendant was not prejudiced by the court's failure to require the state to recall those same witnesses for purposes of the motion to suppress evidence.
There is no merit to the relator's arguments that he was denied a full and fair hearing on the motion to suppress evidence.

TRIAL DELAY
The defendant was indicted on October 19, 1989, but not tried until January 21, 1992. He contends that the twenty-seven month delay in his trial violated the time limitation on prosecution set forth in C.Cr.P. art. 578 and prejudiced his defense. Article 578 provides that, in non-capital felony cases, no trial shall be commenced after two years from the date of institution of the prosecution.
Article 579 provides those circumstances for which the period of limitation shall be interrupted. Those circumstances are: 1) the absence of the defendant from the state or from his usual place of abode "with the purpose to avoid detection, apprehension, or prosecution;" 2) the insanity of the defendant, the inability of the state to obtain the defendant's presence for trial by legal process, or any other cause beyond the control of the state; or 3) the failure of the defendant to appear at any proceeding pursuant to actual notice, proof of which appears of record. The period of limitation commences to run anew from the date the cause of interruption no longer exists.
On November 7, 1991, the court heard the defendant's motion to quash the indictment for failure of the state to commence the trial within two years. At that hearing it was established that on March 22, 1990, the defendant appeared for trial attended by counsel. At the request of the defense the matter was continued and reset for May 16, 1990.[3] The defendant was given notice of the new trial date in open court. On May 16, 1990, the defendant failed to appear and an alias capias was issued for his arrest. The state stipulated that the defendant was erroneously released by the sheriff when his sentence on the aggravated assault conviction was completed. The defendant's brother testified that he and the defendant and another brother went to the courthouse the day after the defendant's release and were told that there were no other cases or court appearances pending. He further testified that, after the defendant's release from the aggravated assault conviction, the defendant lived with him at a different address on the same street that they lived on prior to the defendant's initial arrest.
The arrest of capias notification indicates that the defendant was rearrested on July 17, 1991. The docket master indicates that he then appeared before the court for a status hearing on July 19, 1991, at which new counsel was appointed. Although the evidence fails to support a finding that the defendant absented himself from his usual place of abode with the purpose to avoid detection, apprehension, or prosecution, it does support a finding that the defendant failed to appear at the proceeding on May 16, 1990, despite actual notice given to him on March 22, 1990. The prescriptive period *1109 thus was interrupted until the rearrest of the defendant on July 17, 1991, at which time it began to run anew.
There was no error in the trial court's denial of the defendant's motion to quash.

FALSE STATEMENTS AND REPORTS, SUFFICIENCY OF EVIDENCE
The defendant avers that the prosecution used false statements, false reports and insufficient evidence to persuade the grand jury. He further avers that the trial judge was prejudiced against the defendant when he allowed the prosecution to proceed to trial without probable cause and with false statements, false reports and a lack of evidence. First, the complaint by the victim and her identification of the defendant were sufficient probable cause for the arrest of the defendant for aggravated rape and aggravated burglary. As to the probable cause to bind the defendant for trial, the grand jury shall inquire into all capital offenses triable within the parish and may inquire into other offenses triable by the district court of the parish when requested to do so by the district attorney or ordered to do so by the court. C.Cr.P. art. 437. If the grand jury finds that the evidence is sufficient, if unexplained and uncontradicted, to warrant a conviction, it shall find an indictment charging the defendant with the offense. C.Cr.P. art. 443. The grand jury so indicted the defendant. The trial court is not charged with the authority to review the grand jury's decision, but rather proceeds to try the defendant on the merits of the case. Moreover, a claim that the grand jury's decision was based on insufficient evidence is moot once a defendant is found guilty at trial.
After trial, this court may consider probable cause relative to the seizure of evidence and sufficiency of evidence at trial. As discussed supra, the arresting officers in the aggravated assault case had sufficient probable cause to arrest and consequently seize and confiscate evidence.
As to the defendant's claim that the officers' testimony and reports were false, the defense had the opportunity to cross-examine the state witnesses at trial. The jury then chose to believe those witnesses.
It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence. State v. Rosiere, 488 So.2d 965, 968 (La.1986); State v. Jones, 537 So.2d 1244 (La.App. 4th Cir. 1989); State v. Marsh, 527 So.2d 377, 379 (La.App. 4th Cir.1988), writ den., 532 So.2d 130 (La.1988). Rather, the appellate court reviews the evidence to determine whether it meets minimal constitutional sufficiency standards. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The testimony of the victim that the defendant entered her apartment without her permission, armed with a weapon, and forced her to have sexual intercourse, together with the corroborating medical evidence relative to the rape and the detailed description of the defendant relative to the identification were sufficient for a reasonable trier of fact to find the defendant guilty of aggravated burglary and aggravated rape.

DENIAL OF THE EFFECTIVE ASSISTANCE OF COUNSEL
The defendant makes several claims relative to the denial of effective assistance of counsel. The relator first complains that he was denied counsel at his pre-indictment identification procedure. "Absent special circumstances the presence of counsel is not required at pre-indictment line-up." Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); State v. Bickham, 404 So.2d 929, 933 (La.1981); State v. Hodges, 526 So.2d 406 (La.App. 4th Cir.1988), writ den., 532 So.2d 175 (La. 1988). In Kirby, the court held that the right to counsel was explicitly limited to a criminal prosecution, which commences only with the institution of an adversarial judicial proceeding by formal charge, preliminary hearing, indictment, information or arraignment. Kirby, supra at 92 S.Ct. 1882. In this case, the defendant was identified one hour after the offense on September 22, 1989, prior to the institution of prosecution by indictment on October 19, 1989. The defendant thus had no right to counsel at the pre-indictment identification procedure.
*1110 The defendant further avers that the officers interrogated him following his arrest on other charges, by a process "that lent itself to eliciting incriminating statement and evidence," despite not having waived the right to counsel. There is nothing in the record or transcript which indicates that the defendant made any incriminating statements, before or after he was afforded the right to counsel. Therefore there was no prejudice, even if there is truth to the defendant's claim that he was questioned without a waiver of the presence of counsel.
The defendant's various allegations that counsel rendered ineffective assistance are to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced him. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed by an application for post-conviction relief, filed initially in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir.1986). However, in the interest of judicial economy, the court may consider a claim of ineffective assistance if the record contains sufficient evidence to address the merits of such claim.
The defendant's claim that counsel was ineffective for making two stipulations is without merit. On the second day of trial, counsel stipulated that Beverly Martin, the Property Clerk for the Criminal District Court, would testify if called that on September 22, 1989 she received property tagged by Officer Heindel as having been confiscated by him on that date at 2:35 a.m. from Leroy Johnson, which property included a .25 caliber light metal automatic pistol and ammunition, and that the property was subsequently lost while in her control during a burglary of the Property Room. Counsel also stipulated that Officer James Gallagher, the custodian of complaint histories, would testify if called that State's Exhibit 9 is a regular business record kept in the regular course of business of the New Orleans Police Department. Counsel stipulated only that these officials would testify that their records were authentic. Had counsel refused to so stipulate, these officials would have been called to the stand and would have testified as to the authenticity of their respective documents. Counsel was not ineffective for accepting the stipulations, as they caused no prejudice to the defendant.
The defendant contends that counsel was ineffective for his failure to challenge "probable cause or illegally confiscated evidence." As previously discussed, the probable cause to arrest for aggravated assault was apparent from the testimony at the trial of that matter. The evidence confiscated as a result of that arrest was challenged by a motion to suppress evidence filed by the defendant's first counsel. The trial court correctly denied the motion, finding that the evidence was legally obtained. This claim is without merit.
The defendant's claims relative to the failure of counsel to research and investigate his case require an evidentiary hearing to determine their merit. They are therefore not appropriate for review on appeal, but may be considered by an application for post-conviction relief.
*1111 Finally, the defendant avers error by the trial judge, prosecutor and defense counsel, relative to a plea bargain offered in the middle of trial. Defendant avers that counsel advised him of an offer of a ten year sentence in exchange for a guilty plea. When the defendant refused, counsel brought in a "witness" and "proceeded to infleunce [sic] defendant not to testify in his own behalf." The defendant then avers that defense counsel misled him by giving false information about his police record. Although there is no record of the offer of a plea bargain in the middle of trial, it would not be erroneous for the state to make such an offer. As to the second part of the claim, advice from counsel that the defendant should not testify if he has prior convictions because those convictions could then be brought to the attention of the jury, is generally considered reasonable advice. In any event, whether or not to call a witness is within the ambit of trial strategy and not subject to a claim for ineffective assistance of counsel. State v. Lamothe, 511 So.2d 805 (La.App. 4th Cir.1987). However, if counsel misled the defendant as to his record and thereby convinced him, through false information, that he should not testify; the evidence of counsel's erroneous information may be presented in an application for post-conviction relief.

OTHER CLAIMS
The defendant raises various additional claims which have no merit. A defendant who has been indicted by a grand jury is not entitled to a preliminary examination, although one may be ordered by the court in felony cases. C.Cr.P. art. 292. The state is not required to call the victim at pre-trial motions so that the defendant will have the opportunity to cross-examine her. The defendant does not have an independent right to all documents where he is represented by counsel, who is furnished with the documents. The defendant was not denied due process because no DNA testing was done, where both of the state experts called by the defense, Patricia Daniels and Officer Charles Krone testified that their offices did not do DNA testing. Likewise, the defendant was not denied due process for the lack of fingerprint evidence, where other evidence was sufficient to identify the defendant as the perpetrator.
Finally, the defendant complains that, despite counsel's objection, the prosecutor was allowed to "dictate" erroneous law to the jury relative to reasonable doubt; and that the trial court instructed the jury erroneously relative to reasonable doubt. The state's opening statement was transcribed. It contains no definition of reasonable doubt and thus, no objection by defense counsel. The closing arguments and jury instructions were not transcribed. However, the court reporter certified that no objections were made by the defense. As to the claim of erroneous statements by the prosecutor in closing argument, where the defendant makes no contemporaneous objection at trial, he waives his right to review the error on appeal. C.Cr.P. art. 841. As to the claim of an erroneous reasonable doubt jury charge, this court likewise has held that, if no contemporaneous objection was made, the claim will not be considered on appeal. State v. Dobson, 578 So.2d 533 (La.App. 4th Cir.1991), writ den., 588 So.2d 1110 (La.1991).
Accordingly, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Counsel made an objection, "for the record," to the incorporation of the aggravated assault testimony into the motion to suppress evidence hearing, but failed to state any grounds.
[2] At the rape trial, counsel stipulated that Beverly Martin, the Property Clerk for Criminal District Court, would testify if called that on September 22, 1989 she received property tagged by Officer Heindel as having been confiscated by him on that date at 2:35 a.m. from Leroy Johnson, which property consisted of a Raven .25 caliber light metal automatic pistol, a .25 caliber magazine, and five .25 caliber cartridges, and that the property was subsequently lost while in her control during a burglary of the Property Room.
[3] Defense counsel noted that the docket master failed to indicate that the matter was continued for the defense; however, the trial court correctly held that the minute entry which specified a continuance "by the defense" controlled.