641 So.2d 702 (1994)
STATE of Louisiana
v.
Norbert CAMP.
No. 92-KA-1842.
Court of Appeal of Louisiana, Fourth Circuit.
July 27, 1994.
*703 Harry F. Connick, Dist. Atty., Val M. Solino, Asst. Dist. Atty., New Orleans, for appellee.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for defendant.
Before BARRY, JONES and LANDRIEU, JJ.
LANDRIEU, Judge.
Norbert Camp was indicted by the grand jury for the second degree murder of Rose Stewart in violation of La.Rev.Stat.Ann. § 14:30.1 (West pre-1993 amendment). He was convicted of manslaughter and sentenced as a third offender to serve forty-two years at hard labor. On appeal, this Court reversed his conviction and sentence and remanded for a new trial. State v. Camp, 571 So.2d 195 (La.App. 4th Cir.1990). A second trial on the charge of manslaughter commenced on January 27, 1992; the twelve-person jury found the defendant guilty as charged. On May 12, 1992, the trial court granted a motion to quash the multiple bill and sentenced the defendant to twenty-one years at hard labor. This court reversed the *704 trial court's quashing of the multiple bill on September 21, 1992. Following a multiple bill hearing on June 25, 1993, the trial court found the defendant to be a second offender and sentenced him to serve forty-two years at hard labor. An oral motion to reconsider the sentence was denied. On appeal, defense counsel raises two assignments of error and the defendant raises three pro se assignments of error for the reversal of his conviction and sentence. We affirm the conviction, vacate the sentence and remand for further proceedings consistent with this opinion.

FACTS
On the morning of December 16, 1987, Angie Stewart, the daughter of the victim, Rose Stewart, was preparing to go to school while her mother prepared to go to work. The defendant came to their apartment located at 3711 N. Dorgenois Street and was admitted by the victim. He initially sat at the kitchen table. Angie Stewart and her younger sister left for school but returned a few minutes later because the younger child was complaining of a stomachache. The victim told the girls to go to school. At that time, the defendant asked Angie "Who was down the steps"? The defendant was acting frightened and was looking out the window. The two children then left for school and did not return.
At approximately 8:20 a.m., Officer John Martin received a call that a fight was in progress. He responded to the call, arriving within a minute or two. As Officer Martin approached the scene, he saw a human form hurtling out of an upper story window of the housing project apartment building. After he exited his vehicle, Officer Martin observed the defendant standing at the window from which the victim, later identified as Rose Stewart, had come. While tending to the victim, Officer Martin noticed the defendant come out of the building and run down the street. Officer Martin got back into his police car and chased the defendant who ran to a house owned by Forrest Harper.[1] Officer Martin, along with back-up assistance, went into the house and apprehended the defendant who was combative, agitated, and bleeding from the hand. Officer Martin testified that he never saw anyone chasing the defendant. He never saw the defendant with anything in his hand and did not see him drop anything nor did he see anyone throw the victim from the window. Officer Martin admitted that in his police report the first mention of seeing the defendant was when he came out of the building.
The testimony of Forrest "Pops" Harper was read to the jury.[2] Mr. Harper had testified that at approximately 8:00-8:30 a.m. on December 16, 1987, he heard a noise and disturbance at the front of his house. When Mr. Harper went to the front of the house, he saw the defendant who said "Daddy, don't let them kill me" and "They're trying to kill me".[3] The defendant could not stand well and was covered in blood. He did not try to harm Mr. or Mrs. Harper in any way. Also, according to Mr. Harper's testimony, there were three men outside his house, one of whom was armed with a sawed-off shotgun. The three men were waiting for the defendant to come out. The defendant asked Mr. Harper to call the police.
Augustine Leaper testified that she was a neighbor of the victim and lived in the apartment underneath the Stewarts. She heard voices upstairs, including the victim yelling "Stop, help, call the police". Ms. Leaper also heard a man's voice, which she could not identify, calling for help and for the police. She also heard that same man say he would beat Ms. Stewart if she did not shut up. Ms. Leaper further testified that she saw a man running down the stairs with a knife in his hand, but she could not identify this person because she saw only his back. Ms. Leaper did not see or hear the victim fall from the window. At the time of the trial, Ms. Leaper was in jail for crime against nature.
The prior testimony of another of the victim's neighbors, Clementine Jones, was *705 introduced by the defense. Ms. Jones testified that she heard the defendant, whom she knew, yelling from the victim's apartment "Please call the police, they're trying to kill me". Ms. Jones called the police.
The State established that the victim's urine was negative for alcohol and narcotics. A knife was found on the walkway outside the victim's building; it had Type B human blood on it. The victim's blood was Type O. Additionally, the crime lab technician took seventeen blood samples from the victim's apartment, the building, and Mr. Harper's house. Seven of those samples were sufficient to type; all were Type B. The sufficient samples from the victim's apartment were from a curtain in the bedroom and a kitchen cabinet. The rest of the samples which could be typed came from the building stairwell and the Harper house. A pipe found in the victim's apartment tested positive for cocaine. No fingerprints were taken from the victim's apartment. The burglar bars at the kitchen window were bent, and there was blood on the window sill and on the refrigerator. There were also blood stains on the bedroom window sill and the brick portion outside the window sill; the bedroom window was the one from which the victim fell. These bloodstains were never typed because the sample was insufficient.
Dr. Paul McGarry, an expert in forensic pathology, performed the autopsy on Rose Stewart. In addition to massive internal injuries, Dr. McGarry found that the victim had defensive knife wounds on her hands. She also had a cut on the earlobe. Dr. McGarry found recent and old track marks on the victim. Dr. McGarry viewed a diagram of the defendant's hand from his Charity Hospital records. That diagram showed cuts on the defendant's fingers which could have occurred by his hand slipping down on a knife blade. However, Dr. McGarry testified that the cuts were also consistent with a man reaching and grabbing a knife.

DISCUSSION
ERRORS PATENT
Our review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, the appellant contends that the trial court erred in overruling objections made by the defendant during the State's closing arguments. Specifically, the appellant argues that the prosecutor's arguments were not supported by the evidence, went beyond the scope of permissible argument, and included a reference to the defendant's failure to testify.
La.Code Crim.Proc.Ann. art. 770 (West 1981) provides that a mistrial shall be declared when a remark or comment is made by certain persons, including a district attorney, which refers directly or indirectly to a defendant's failure to testify in his own defense. A direct reference mandates a mistrial whereas an indirect reference permits the court to inquire into the remark's intended effect on the jury. State v. Johnson, 541 So.2d 818 (La.1989). A mistrial is required when an indirect reference is intended to draw the jury's attention to the defendant's failure to testify or present evidence. If the defendant himself is not the only witness who might take the stand to refute the state's case, argument to the jury that the state's presentation of the facts is uncontroverted does not focus the jury's attention on the defendant's failure to testify. State v. Smith, 433 So.2d 688 (La.1983); State v. Latin, 412 So.2d 1357 (La.1982); State v. Perkins, 374 So.2d 1234 (La.1979); State v. Mullins, 537 So.2d 386 (La.App. 4th Cir.1988).
The remarks which the appellant contends are a reference to his failure to testify were:
BY MR. BOHLMAN (prosecutor): Ladies and gentlemen, the defense talked about the State's hypothesis. The defensethere is no defense hypothesis that you've heard any evidence in. The only other hypothesis
BY MR. DEEGAN (defense counsel): Objection, your honor.
BY THE COURT: Overruled.
BY MR. BOHLMAN:besides that man, Norbert Camp, killing the victim are: Number one, a suicide. You heard Angie Stewart, she was getting ready to go to work that day. There was no reason for her to jump out the window. The [sic] was *706 no reason for her to stab herself on the hands that many times and then jump out of the window. Stab her ear with a slice? That wasn't suicide, it wasn't an accident. People don't accidentally rip open a kitchen window to accidentally fall out and then accidentally
The comment cannot be viewed as a direct reference to the defendant's failure to testify, and therefore this Court must inquire into the remark's intended effect on the jury. As the appellant's brief points out, the defense did present a hypothesis of innocence, that the victim and the defendant were attacked by three men who pursued the defendant to Mr. Harper's house. Evidence presented to support its hypothesis included the prior testimony of Clementine Jones and Mr. Harper. The prosecutor's remarks were intended to encourage the jury to discount any other hypotheses of innocence which could come to mind, specifically, those advanced by the defense counsel only during his closing argument.
In any event, the defense counsel, during closing argument, discussed the defendant's failure to testify. The prosecutor's reference to the lack of defense evidence can hardly be considered prejudicial in light of the fact that the defense brought the entire issue directly to the jury's attention.
The appellant's contention that the prosecutor argued outside the evidence has slightly more merit. La.Code Crim. Proc.Ann. art. 774 (West 1981) provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
Even if such remarks go beyond the scope of Article 774, the remarks are harmless unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Byrne, 483 So.2d 564 (La.1986), cert. denied, Byrne v. Louisiana, 479 U.S. 870, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986); State v. Williams, 575 So.2d 452 (La.App. 4th Cir.), writ denied 578 So.2d 130 (La.1991).
The prosecutor argued that the men Forrest Harper saw outside his home might have been people angry because "they saw a friend of theirs being thrown through a window and killed in that fashion". This remark is an appropriate conclusion drawn from the evidence, and thus permissible under Article 774.
Next, the appellant complains that the prosecutor intentionally misled the jury by arguing that Augustine Leaper testified she saw the defendant with a knife when he came down the stairs from the victim's apartment and that she heard the defendant threatening the victim. Ms. Leaper had testified that she could neither identify the voice of the man in the victim's apartment nor could she recognize or identify the man that she saw running down the stairs with a knife in his hand, because she never saw that man from the front. The appellant argues that these inaccuracies are highly prejudicial because of the circumstantial nature of the case against the defendant and the fact that Officer Martin, who did identify the defendant as the man he saw running down the stairs, stated that he did not have anything in his hands.
Here, the intent of the prosecutor was not to paraphrase the testimony, but to highlight a reasonable conclusion which could be drawn from the evidence. Relying on the testimony of the victim's daughter, Angie Stewart, and Officer John Martin, the prosecutor was presenting his position to the jury that the evidence supported the conclusion that the voice heard by Ms. Leaper was in fact the appellant, and that, likewise it had to be appellant who Ms. Leaper observed fleeing down the stairs with a knife in hand. The victim's daughter testified that Norbert was in their apartment at the time of this incident. Another witness observed the appellant in the apartment only seconds after the victim was thrown from the window.
The defense counsel never specifically asked the trial court to admonish the jury, nor did the court do so. However, the court *707 did state that the prosecutor's statements were argument, rebuttal, and "not evidence." See State v. Harrison, 93-1259 (La.App. 4th Cir. 1/13/94); 631 So.2d 531, writ denied, 94-0412 (La. 5/20/94); 637 So.2d 477. Also, each time the defense attorney objected to the prosecutor's remarks, he stated his appreciation of what the evidence had been. Thus, the jury was made aware that the prosecutor's remarks were not evidence.
Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 2
The appellant contends that there was insufficient evidence to sustain his conviction, because the State failed to prove beyond a reasonable doubt that the defendant was the perpetrator and failed to exclude every reasonable hypothesis of innocence.
In State v. Monds, 91-0589 (La.App. 4th Cir. 1/14/94); 631 So.2d 536, 539-540, writ denied, 94-0626 (La. 4/22/94); 637 So.2d 164, this Court reiterated the standard for an appellate review of the sufficiency of evidence to support a defendant's conviction:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 [61 L.Ed.2d 560] (1979); State v. Green, 588 So.2d 757 (La.App. 4th Cir. 1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, supra [523 So.2d 1305 (La.1988) ]. The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green, supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 [1324] (La. 1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La.R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La. 1987). The exclusion of every reasonable hypothesis of innocence is a component of the more comprehensive reasonable doubt standard. State v. Wright, 445 So.2d 1198 (La.1984). Stated another way, where the evidence is purely circumstantial, if it does not exclude every reasonable hypothesis of innocence, a rational juror cannot find defendant guilty beyond a reasonable doubt without violating constitutional due process safeguards.
In the instant case, the jury rejected the defendant's hypothesis of innocence, that some other person or persons were in the victim's apartment and attacked both Rose Stewart and himself, then pursued him to the Harper home. The testimony of Officer Martin was that no one was chasing the defendant when he left the building, nor did anybody chase him to the Harper house. Officer Martin also testified that he saw the defendant at the window from which Ms. Stewart fell, although this fact was not reflected in the initial police report. The knife *708 found outside the victim's apartment building could easily have been dropped by the defendant as he fled. The bedroom of the victim's apartment contained at least one blood stain which did not belong to the victim.[4]
Regarding Ms. Jones' testimony that she observed a man enter the apartment building in which the victim resided, that man could have been headed to any one of the apartments located in the project building. No where in her testimony did Ms. Jones state that this individual entered the victim's apartment. Ms. Jones duly noted that it was not unusual for men to be entering the apartment building, and therefore, she did not attach any significance to seeing him enter. Lastly, Ms. Jones testified to hearing only two voices coming from the apartment, that of the victim and appellant.
Appellant's position is that there were other men in the victim's apartment while he was screaming for help. However, the man Ms. Jones allegedly saw entered the building as the disturbance was in progress. Considering this man was seen entering the building on the first floor while the disturbance was in progress, the jury could conclude quite easily that he was not involved in the activities surrounding the victim's death.
Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that every reasonable hypothesis of defendant's innocence was excluded. Accordingly, this assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 1
In his supplemental pro se brief, the appellant first contends that he was denied the effective assistance of counsel because trial counsel did not object to the State's proffer of the prior testimony of Officer Michael Lauer[5] without a showing of unavailability. The record does not indicate that counsel made any objection to the testimony, nor does the record show any prior motions by the State regarding the admissibility of Officer Lauer's testimony from the first trial.
The issue of ineffective assistance of counsel is generally addressed by post conviction relief application wherein an evidentiary hearing can be held. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 619 So.2d 1102 (La.App. 4th Cir.), writ denied 625 So.2d 173 (La.1993). However, if the appellate record contains enough evidence upon which to base a ruling on the issue, the appellate court will make a determination in the interest of judicial economy. State v. Seiss, 428 So.2d 444 (La.1983); State v. Johnson, 619 So.2d at 1110.
The record gives absolutely no indication whether Officer Lauer was, in fact, unavailable. If he were unavailable, then any objection by counsel would have been overruled and the failure to object could not result in prejudice to the defendant. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See also State v. Bell, 543 So.2d 965 (La.App. 4th Cir.1989). Furthermore, the State may have provided sufficient evidence to defense counsel to show that Officer Lauer was unavailable, but did not place the evidence in the record. In that event, counsel cannot be deemed deficient for his failure to object. State v. Bell, 543 So.2d at 969. Only an evidentiary hearing held pursuant to a post conviction relief application would establish the facts.
The appellant also argues that because of his counsel's deficient conduct, he was denied the right to confront Officer Lauer. The basis of this argument is a copy of a transcript, attached to the supplemental brief, which purports to be Officer Lauer's testimony from the first trial. Portions of this testimony *709 from cross-examination, as well as the State's redirect, are not in the trial transcript of the present appeal. The appellant contends that the prosecutor failed to read all of Officer Lauer's testimony to the jury at the second trial, and that the omission of large portions of the cross-examination resulted in a denial of the right to confront the witness.[6] Because this Court cannot establish from the present record if or why Officer Lauer's testimony in full was not presented to the jury, the defendant is relegated to raising the entire issue in post-conviction relief at which time an evidentiary hearing can be held.

PRO SE ASSIGNMENTS OF ERROR NUMBERS 2 AND 3
In his second pro se assignment of error, the appellant contends that the trial court erred in denying his motion to quash the multiple bill of information. He argues that the multiple bill should have been quashed because the predicate offense, a guilty plea to being a convicted felon in possession of a firearm, is constitutionally invalid because, at the time he entered the guilty plea, he was not informed of the nature and elements of the crime nor did he understand the elements.[7] In his third assignment of error, the appellant argues that the evidence presented at the multiple bill hearing was insufficient to adjudicate him a multiple offender. Because these substantive issues are intertwined, we will discuss them together.
The Louisiana Supreme Court revised the scheme of allocating burdens of proof in habitual offender proceedings in State v. Shelton, 621 So.2d 769, 779-780 (La.1993). The court stated:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a `perfect' transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a `perfect' transcript, for example, a guilty plea form, a minute entry, an `imperfect' transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of three Boykin rights. We note that this new procedure will not only give appropriate significance to the presumption of regularity which attaches to judgments of conviction which have become final, but will also provide an advantage to defendants who were previously under [State v.] Lewis [367 So.2d 1155 (La.1979)] unable to introduce any extra-record evidence and whose guilty pleas were heretofore under [State v.] Tucker [405 So.2d 506 (La.1981)] found constitutionally valid by mere proof of a minute entry and a guilty plea form.
Under this new scheme, the State satisfies its burden of proof by presenting evidence of a prior guilty plea and proof the defendant was represented by counsel when the plea was taken. Here the defendant also objected to the validity of the prior conviction. Therefore, to insure that it met its burden, the State introduced the transcript from the earlier conviction. That transcript, State's exhibit S-4, is a "perfect" transcript. The trial court asked the defendant if he understood *710 that he was giving up his right to be tried before a judge or jury, his right to face and cross-examine witnesses who accused him, his right to bring witnesses in to testify for him, and his privilege against self-incrimination, which the court explained meant that he would not have to take the witness stand and testify if they held a trial. The defendant affirmatively stated that he understood his rights.
Furthermore, the trial court specifically informed the defendant that he was pleading guilty "as a convicted felon in possession of a firearm". Although the appellant now contends that he did not understand the elements of this offense, he was clearly informed of the nature of the charge to which he was admitting guilt. Furthermore, when asked if he had been forced, threatened, or intimidated into pleading guilty, the defendant replied that he had not. This transcript shows that the defendant had made a voluntary and intelligent plea of guilty to the predicate offense, and the State met its burden under State v. Shelton, 621 So.2d at 779-780.
The appellant additionally argues, however, that the Boykin transcript from the predicate plea was "uncertified", i.e. not properly authenticated, and thus should not have been admitted into evidence. Counsel made the same objection at the multiple bill hearing. The defendant contends that without a properly authenticated transcript, the State failed to carry its burden under Shelton.
In State v. Melton, 456 So.2d 192 (La.App. 4th Cir.1984), this Court considered this same issue. The Court held that an uncertified copy of a Boykin transcript was not properly authenticated when there was no testimony from a custodian of the copy. The statement of the trial judge that he recognized the court reporter's signature was held insufficient to authenticate the transcript.
This Court is in possession of the State's exhibit S-4. It is a photocopy of a Boykin transcript, not an original. It is not certified by the clerk's office or any other custodian. The only certificate on the document is by the court reporter which indicates that this was a transcript of her notes. A court reporter's certification was held insufficient in Melton, 456 So.2d at 197. Here, as in Melton, the court reporter did not testify at the hearing. Therefore, the Boykin transcript, S-4, was improperly admitted into evidence.
Given that the transcript was improperly admitted, the evidence must be considered as not introduced. As was stated in Shelton, if the State introduces anything less than a `perfect' transcript, for example, a guilty plea form, a minute entry, an `imperfect' transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of three Boykin rights. In the instant case, the trial court apparently did weigh the other evidence, specifically the waiver of rights form, stating:
Let me have the Boykin.
Let the record reflect that the Boykin form, each right that is listed on that form, the plea of guilty form, the defendant's initials are on the form as to each right and the defendant signed the Boykin form.
The motion to quash is denied.
However, the instant multiple offender proceeding occurred prior to the Louisiana Supreme Court's decision in State v. Shelton.[8] The Court in Shelton found that the State had provided sufficient evidence of the existence of the prior guilty plea and that the defendant was represented by counsel at the time it was taken. The Court then remanded to allow the defendant an opportunity to attempt to meet his burden of production at a hearing to be held consistent with the opinion.
The evidence submitted by the State at the multiple offender hearing in Shelton consisted of a minute entry which stated that the judge "gave the defendant his rights" and a waiver of rights form which included all of *711 the rights under Boykin. The waiver of rights form had been completely initialled by the defendant and included the statement that he understood all of the legal consequences of pleading guilty. The Supreme Court stated:
Most importantly, the form stated the following: "The court has addressed me personally as to all of these matters and he has given me the opportunity to make any statement I desire." The form was initialled several times by the defendant and was signed by the defendant, his attorney, and the trial judge. We conclude, consistent with Tucker and [State v.] Santiago [416 So.2d 524, 526 (La.1982)], that the State introduced evidence sufficient to meet its burden of making an affirmative showing that the guilty plea was informed, free and voluntary, and made with an articulated waiver of the three Boykin rights. [Emphasis in original] Shelton, 621 So.2d at 777.
The State in the present matter also introduced a minute entry and a waiver of rights form. The minute entry states that "the defendant was sworn and Boykinized as per notes of the Court Reporter". The waiver of rights form contains the rights under Boykin and the defendant's initials appear after each of those rights. The defendant initialled after the statement that he had been informed and understood the charge to which he was pleading guilty. The form is signed by the defendant, his attorney, and the trial judge. However, the form does not contain the emphasized language found in Shelton.
In the instant case, the State's evidence, excluding the transcript, is sufficient to prove the existence of the prior guilty plea and that the defendant was represented by counsel at the time of the plea. However, without the transcript, we are unable to determine whether the defendant knowingly and voluntarily entered his guilty plea in the predicate offense. The minute entry does not properly articulate what rights the defendant may have waived. Under Shelton, a defendant must be given an opportunity to attempt to meet his burden of proof. See State v. Carter, 630 So.2d 926 (La.App. 4th Cir.1993).
For the foregoing reasons, the defendant's conviction is affirmed. His sentence and adjudication as a second offender is vacated and the case remanded for further proceedings consistent with this opinion.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED.
NOTES
[1] Mr. and Mrs. Forrest Harper resided at 2524 Congress Street.
[2] This testimony was from the defendant's first trial.
[3] Mr. Harper testified that the neighborhood people often referred to him as "Daddy" or "Pops".
[4] No direct evidence was presented by the State to show that the defendant's blood type was Type B, which was the only type found among those blood samples which were large enough to be analyzed. The jury could have drawn an inference that the defendant has Type B blood because the blood samples taken from the Harper home were Type B, and Mr. Harper identified the blood stains (as depicted in photographs taken in his home) as having been left by the defendant.
[5] Michael Lauer was the officer assigned to process the scene. He photographed the scene, collected all evidence located at the scene, and preserved such evidence, marking it and taking it back to headquarters.
[6] The transcript attached to the appellant's brief is not a part of the record before this Court and thus not considered.
[7] The motion to quash which was granted by the trial court, and reinstated by this Court, was based on different grounds, specifically that a conviction for violating La.Rev.Stat.Ann. § 14:95.1 (West pre-1992 amendment) could not be used in a multiple bill.
[8] The multiple offender hearing occurred on June 23, 1993. The decision in Shelton is dated July 1, 1993.