Judge Daniel L. Dysart
_JjTimothy T. Jones was charged with two counts of being a felon in possession of a firearm (La. R.S. 14:95.1) arising out of his arrest on February 11, 2014. In the same bill of information, he also was charged with one count of attempted second degree murder (La. R.S. 14(27)30.1) and another count of felon in possession of a firearm, resulting from a shooting on February 17, 2014. Following a jury trial, Jones was found guilty as charged on all counts.
The trial court initially imposed original sentences of twenty years for each felon in possession of a firearm conviction, and fifty years for the attempted second degree murder conviction, to be served concurrently and without the benefit of probation, parole, or suspension of sentence. The State filed a multiple bill of information as to the attempted second degree murder, alleging Jones to be a second multiple felony offender. The trial court adjudicated Jones a second felony offender, vacated the fifty-year sentence for the attempted second degree murder, and imposed a sentence of one hundred years without benefit of parole, probation, or suspension of sentence, to be served concurrently with the other three sentences.
On appeal, Jones challenges the sufficiency of the evidence as. to the conviction for the attempted second degree murder. He further argues that the trial court erred in not severing the February 11, *347 2014 charges from the February 17, 2014 charges.
| ¿For the reasons that follow, we affirm the convictions, and the sentence imposed as to the attempted second degree murder, and remand for the imposition of fines as to the firearm charges, as discussed below.
BACKGROUND:
On February 11, 2014, a multi-agency task force had assembled at a local hotel[1] to execute an arrest warrant for- Christopher Williams. Detective Jason Samuel of the New Orleans Police Department’s Special Operations Division, was working with the United States Marshall Service Fugitive Task Force. Detective waited outside the hotel room, while U.S. Marshalls entered to apprehend Williams. A marshall told Detective Samuel that there was a handgun in plain view in one of the bedrooms. Based on the discovery of the handgun and what Detective Samuel perceived as the odor of marijuana coming from the room, he instructed the marshalls to secure the premises, so that a search warrant could be obtained. After obtaining the warrant, Detective Samuel entered the suite, and saw the handgun in the open drawer of a nightstand. He also found a duffle bag containing an assault-type rifle, two bottles of prescription pills bearing the name “Timothy Jones,” and Jones’ Tennessee identification card.
Detective Samuel testified that he did not speak to any of the suite occupants, but was informed by a marshall that Jones was a convicted felon. Four people were in the suite: Williams, Jones, Craig Weary and Kenya Coleman. The latter two were released. Williams was arrested based on his outstanding warrants, and Jones was arrested for being a felon in possession of a firearm. Detective Samuel learned that the suite was rented by Kenya Coleman.
IsLater that same day, Kenya Coleman reported a theft to the New Orleans Police Department (“NOPD”). ■ NOPD Officer Jeremy Simoneaux testified that he responded to the call during which Coleman told him that approximately $3,700 worth of clothing and shoes had been stolen. During his investigation, Officer Simo-neaux learned that the clothes belonged to Jones, and Craig Weary was the alleged thief. Officer Simoneaux obtained a warrant to arrest Weary.[2]
Jailhouse recordings of phone conversations Jones had with unidentified parties on February 12 and 13, 2014, were introduced at. trial. In the February 12, 2014 conversation, Jones was told by an unidentified woman that “Cash” stole his clothes and his Jordan® shoes. Jones stated that he would take care of Weary, In the February 13, 2014 conversation, an unidentified woman asked Jones to kill Weary.
Jones, was released from prison on February 14, 2014. Craig Weary was shot on February 17, 2Q14.
NOPD Detective Johnny Carter testified that when he arrived at the scene of the shooting, Weary was on the ground, lying in the arms of his girlfriend, Tia Alonzo. All Weary said was, “He shot me.” Detective Carter spoke to the owners of a nearby house as well as Alonzo, and learned that the shooter’s nickname was “Loochie,” a/k/a Timothy Jones. Detective Carter attempted to interview Weary, but he refused. With the assistance of the Louisiana State Police, a photographic lineup *348 was compiled and shown to' Weary, who identified Jones. Thereafter, | ¿Detective Carter obtained a warrant for Jones’ arrest, and he was arrested in Memphis, Tennessee.
Tia Alonzo testified that on February 17, 2014, she picked up Weary from a friend’s house. She saw Jones, or “Loochie,” approach Weary, but as the two men were behind another car, she could not see them. Approximately five minutes later, Alonzo heard two shots. She saw Weary lying on the ground and called 911.
Ashley Williams testified that she worked as a prostitute for Christopher Williams, and had been staying at the Residence Inn for three or four days with Jones, Williams, and another woman. On February 11, 2014, she was stopped by law enforcement officers outside the hotel, and told them that Williams was in the suite. Ashley Williams testified that Jones occupied one of the bedrooms in the suite, and that she saw him with weapons. She also admitted speaking to Jones while he was incarcerated.
Ashley Williams also testified that she saw Jones shoot Weary on February 17, 2014. She was picking up some clothes from a friend’s house that day, and encountered Weary waiting for Alonzo on the porch. Ashley Williams returned to her car, preparing to. leave when Alonzo arrived. Jones approached and asked Weary to speak to him. Although Ashley Williams could not hear the two men’s conversation from her car, she could see them. She saw Jones hit Weary, and Jones’ gun “flew” from his waistband. Jones retrieved the gun, and as Weary began to walk away, Jones shot him twice in the back.
Morgan Preston, an Orleans Parish District Attorney’s Office investigator, testified that she spoke to Christopher Williams while he was incarcerated in St. Tammany Parish. Williams told her that the assault weapon found in Jones’ room in the hotel suite — an AK 47 — belonged to Jones.
| [¡Department of Homeland Security Special Agent Amanda Smith was involved with the investigation of Jones from the time of the Residence Inn Hotel arrests. During the investigation, she obtained a search warrant for Jones’ cell phone. At trial, the State introduced three copies of photographs taken from Jones’ cell phone, which showed Jones with handguns. Agent Smith also obtained a search warrant for Jones’ Facebook account. This search also produced photos of Jones in possession of guns.
ERRORS PATENT
The record reveals one error patent in sentencing. The trial court issued illegal sentences for the firearm charges when it neglected to impose fines; the sentences are otherwise legal. La. R.S. 14:95(B) mandates a fine of “not less than one thousand dollars and not more than five thousand dollars” be imposed on those convicted of being a felon in possession of a firearm. Accordingly, this case is remanded for the trial court to impose fines for counts 1, 2, and 4. See State v. Patin, 14-0510 (La.App. 4 Cir. 5/20/15), 171 So.3d 959, writ denied, 15-1191 (La. 5/27/16), 192 So.3d 741.
DISCUSSION:
In his first assignment of error, Jones asserts that the evidence presented at trial was insufficient to support his conviction for attempted second degree murder as it shows that he acted in sudden passion or heat of blood, warranting only a manslaughter conviction. See La. R.S. 14:31(A)(l)(manslaughter is first or second degree murder committed in sudden passion or heat of blood).
*349 Jones relies on the testimony of Ashley William to prove that he did not initially aim his gun at Weary. Rather, Jones argues, he was provoked into losing |fiself-control and cool reflection when Weary tried to grab his gun after it flew out of his waistband when he punched Weary.
Generally, when assessing the sufficiency of evidence to support a conviction, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational fact finder could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 309, 99 S.Ct. 2781, 2784, 61 L.Ed.2d 560 (1979). This review must include the whole record, as a rational fact finder does. State v. Gibson, 15-0682, p. 12 (La.App. 4 Cir. 1/27/16), 186 So.3d 772, 780, citing State v. Mussall, 523 So.2d 1305, 1310 (La. 1988). It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence. State v. Johnson, 619 So.2d 1102 (La.App. 4 Cir. 1993), citing State v. Rosiere, 488 So.2d 965, 968 (La. 1986); see also State v. Gibson, 15-0682, p. 13 (La.App. 4 Cir. 1/27/16), 186 So.3d 772, 780, quoting State v. Smith, 600 So.2d 1319, 1324 (La. 1992) (“[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence^]” Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the fact finder. State v. Brumfield, 93-2404, pp. 5-6 (La.App. 4 Cir. 6/15/94), 639 So.2d 312, 316.
Second degree murder is the killing of a human being when the offender has specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1(A)(1). Where a defendant commits a homicide that would be first or second degree murder, but does so “in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection[,]” the homicide is classified as a manslaughter. La. R.S. 14:31(A)(1). If a jury finds that the offender’s blood actually cooled or that an average person’s blood would |7have cooled at the time the homicide was committed, then it may not reduce a second degree murder to manslaughter. State v. Robinson, 01-1305, p. 11 (La.App. 4 Cir. 4/17/02), 820 So.2d 571, 579. “Sudden passion” and “heat of blood” are not elements of manslaughter. State v. Snyder, 98-1078, p. 4 (La. 4/14/99), 750 So.2d 832, 837. Rather, they are mitigating factors in the nature of a defense. Id. A defendant bears the burden of showing by a preponderance of evidence that he acted in “sudden passion” or “heat of blood” in order to be entitled to a manslaughter verdict. State v. Bowens, 14-0416, p. 5 (La.App. 4 Cir. 12/10/14), 156 So.3d 770, 774.
To find in favor of a defendant raising a manslaughter claim, a reviewing court “must determine whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that these mitigating factors were established by a preponderance of the evidence by the defendant. Id., citing State v. Lombard, 486 So.2d 106, 110-11 (La. 1986).
The State presented evidence that Jones, while in jail, learned that Weary had stolen his property and was wearing his clothes. Three days after being released from jail, eye witnesses saw Jones argue with Weary. Though she could not see the two men behind a car, Tia Alonzo heard two gunshots. Ashley Williams testified that saw Jones shoot Weary in the back.
The recordings of Jones’ jailhouse conversations indicate that he was angry-because Weary had stolen his clothes after *350 Jones was arrested at the hotel on February 11, 2014. As Jones shot Weary on February 17, 2014, an ample amount of time had passed to allow Jones to cool off after learning of the theft.
| ¡Accordingly, we find correct the jury’s determination that Jones had specific intent to kill or inflict great bodily harm on Weary, supporting the verdict of attempted second degree murder.
In his second assignment of error, Jones asserts that the February 11, 2014 offenses — two counts of felon in possession of a firearm — should have been tried separately from the February 17, 2014 offenses — attempted second degree murder and felon in possession of a firearm. He argues that he was prejudiced by trying all four counts together as the jury could have inferred from the first two counts that he had a criminal disposition. He also asserts he was prejudiced by the fact that one of the first two counts involved the possession of an assault weapon.
Louisiana Code Criminal Procedure art. 493 permits that:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
Specifically applying, to joinder of felonies, La. Code Crim. Proc. art. 493.2 qualifies that felony offenses may be charged together,
provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Cases so joined shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.
Pursuant to La. Code Crim. Proc. art. 495.1, where “it appears that a defendant or the state is prejudiced by a joinder of offenses,” the trial “court may order separate trials, grant a severance of offenses, or provide” other relief.
The movant bears the burden of proving that severance is necessary to avoid prejudice. State v. Dabney, 15-0001, p. 17 (La.App. 4 Cir. 9/9/15), 176 So.3d 515, 526, In meeting this burden, “[fjactual, rather than conclusory allegations are required.” Id., quoting State v. Davis, 92-1623 (La. 5/23/94), 637 So.2d 1012, 1019. Where the evidence showing separate offenses “is relatively simple and. distinct, so that the jury can easily keep the evidence of each offense separate in its deliberations” the joinder has no prejudicial effect. Dabney, 15-0001, p. 16, 176 So.3d at 526, citing State v. Deruise, 98-0541, p. 7 (La. 4/3/01), 802 So.2d 1224, 1232.
A trial court’s decision whether to sever trial of offenses is reviewed for abuse of discretion. Id. In determining whether the joinder of offenses causes prejudice, a trial court should consider: “whether the jury would be confused by the various counts; whether the'jury would be able to’ segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether,. especially considering the nature of the charges, the charging of several crimes would make the jury hostile.” State v. Lee, 99-1404, p. 6 (La.App. 4 Cir. 5/17/00), 764 *351 So.2d 1122, 1126, quoting State v. Washington, 386 So.2d 1368, 1371 (La. 1980).
We do not find' that Jones has demonstrated that any of the factors set forth in Washington and Lee were established; rather, he only argues that the weapons charges inferred a criminal disposition- to the jury.
After Jones was arrested on February 11, 2014, Jones was informed that Weary was wearing his clothes that he had left at the hotel. After being released from jail, Jones shot Weary in front of at least one eyewitness on February 17. The offenses were clearly “of the same or similar nature.” La. Code Crim. Proc. art. 493.2. Three of the four charges were for the same crime, felon in possession of a Imfirearm. The fourth charge — attempted second degree murder — was based on Jones’ use of a gun to shoot Weary. Finally, the evidence of each gun possession count and the attempted murder count was clearly presented and did not .lead to jury confusion. We find that the charges in this case were properly joined according to statutory authority in that they were “based... on two or more acts or transactions connected together.” La. Code Crim. Proc. art. 493.2. As Jones points to no evidence to show the trial court abused its discretion in allowing the charges in this case to be tried together, we find that he has failed to meet the necessary burden for obtaining relief.
Based on the factual and legal analysis above, Jones’, convictions are affirmed. The sentence on the attempted second degree murder charge is also affirmed. However, the omission of fines for the felon in possession of a firearm convictions is error patent. Accordingly, this case is remanded for the trial court to impose fines for the three gun charges, in compliance with La. R.S. 14:95.1(B).
CONVICTIONS AFFIRMED; SENTENCE AFFIRMED AS TO COUNT 3; REMANDED FOR IMPOSITION OF FINES ON COUNTS 1, 2 AND 4

. Residence Inn Hotel, 345 St. Joseph Street, New Orleans, Louisiana.

. In the 911 call reporting the theft, Coleman stated that "Cash” was leaving the hotel room and had taken her boyfriend's, Jones', clothing. It was later determined that "Cash” was a nickname of Craig Weary.